**Shawn McDIFFETT, Plaintiff,**

v.

**Gary STOTTS, Mike Nelson, Ken Lumin, Bob Keckler, R.C. Vosburgh, John Summers, David Suttle, Deneise Yonts, (NFN) Goodwin, Officer, Defendants.**

Civ.A. No. 92–3414–GTV.

United States District Court,
D. Kansas.

Sept. 18, 1995.

Shawn McDiffett, Santa Fe, NM, pro se.

John J. Knoll, Kristy L. Hiebert, Office of the Attorney General, Topeka, KS, for defendants.

## MEMORANDUM AND ORDER

VAN BEBBER, Chief Judge.

This case is a civil rights action filed pursuant to 42 U.S.C. § 1983. Plaintiff Shawn McDiffett, proceeding pro se and in forma pauperis, is in the custody of the Kansas Department of Corrections and was incarcerated at the El Dorado Correctional Facility (EDCF) at all times relevant to this lawsuit. The plaintiff complains the defendants, EDCF staff, violated his Fourth, Fifth, Eighth,[1] Ninth, and Fourteenth Amendment rights with regard to urinalysis testing, administrative segregation, and disciplinary hearings. Pending before the court are the parties' motions for summary judgment. For the reasons stated below, McDiffett's motion for summary judgment (Doc. 45) is denied and the defendants' cross-motion for summary judgment (Doc. 64) is granted.

### I. Legal Standards

 Summary judgment is proper if the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show that there is no genuine issue regarding any material fact and that the moving party is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(c). All disputed facts, and reasonable inferences derived from the evidence presented, must be resolved in favor of the nonmoving party. See Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp., 475 U.S. 574, 587–88, 106 S.Ct. 1348, 1356–57, 89 L.Ed.2d 538 (1986); Frandsen v. Westinghouse Corp., 46 F.3d 975, 977 (10th Cir.1995); F.D.I.C. v. 32 Edwardsville, Inc., 873 F.Supp. 1474, 1479 (D.Kan.1995). The existence of factual disputes is not an automatic preclusion to the grant of summary judgment. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247–48, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986). A "material" fact is one "that might affect the outcome of the suit under the governing

---

1. The plaintiff cites the Sixth Amendment in context of his cruel and unusual punishment claim. The court presumes he meant to cite the Eighth Amendment.

law," and the issue is "genuine" if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986). The initial burden of demonstrating want of a genuine issue of material fact rests with the movant. Showing a lack of evidence to support the nonmovant's case discharges this burden. *Celotex Corp. v. Catrett*, 477 U.S. 317, 325, 106 S.Ct. 2548, 2554, 91 L.Ed.2d 265 (1986). After the movant has supported properly the summary judgment motion, the nonmoving party "must set forth specific facts showing that there is a genuine issue for trial" and not rely upon allegations or denials contained in the pleadings. *Anderson*, 477 U.S. at 256, 106 S.Ct. at 2514.

The movant is entitled to judgment as a matter of law should the nonmoving party insufficiently establish an essential element of a claim for which the nonmovant has the burden. *Celotex Corp.*, 477 U.S. at 322, 106 S.Ct. at 2552.

Rule 56 should be construed to satisfy one of its principal purposes, namely, to segregate and eliminate factually unsupported claims and defenses. *Id.* Entitlement to summary judgment must be proven beyond a reasonable doubt. *Norton v. Liddel*, 620 F.2d 1375, 1381 (10th Cir.1980).

"It is well settled law that to establish a claim under § 1983, a plaintiff must allege a deprivation of a federally protected right under color of state law." *Malek v. Haun*, 26 F.3d 1013, 1015 (10th Cir.1994); *see Hill v. Ibarra*, 954 F.2d 1516, 1520 (10th Cir. 1992); *Olson v. McKune*, No. 92–3287, 1995 WL 261110, *1 (D.Kan. Apr. 18, 1995).

## II. *Urinalysis*

The plaintiff claims he was subject to drug-screening urinalysis testing on September 26, 28, and 29, 1992 in violation of the Fourth Amendment. *See Lucero v. Gunter*, 17 F.3d 1347, 1349–50 (10th Cir.1994) (urinalysis is a search under the Fourth Amendment). McDiffett contends the defendants did not follow Kansas Department of Corrections Internal Management Policies and Procedures (IMPP) 12–124, which states that tests "shall not be conducted for purposes of harassment." (Memo. in Support of Pltf.'s Motion for Summary Judgment, Ex. A, at 1.) According to the plaintiff, proof of the fact the urinalysis testing was not random and was conducted to harass him is that he was tested on three out of four days. *Cf. Lucero v. Gunter*, 52 F.3d 874, 877 (10th Cir.1995) ("random urine testing of inmates does not violate the Fourth Amendment"). McDiffett concludes that the defendants' failure to follow their own rules also violates due process. *See Giampetruzzi v. Malcolm*, 406 F.Supp. 836, 840 (S.D.N.Y.1975), and cases cited therein.

The defendants dispute how many times McDiffett was subjected to an urinalysis, contending he underwent urinalysis testing only on September 26 and 29, 1992. The defendants provide for the court's in camera inspection a copy of the drug screening log, which supports their contention.[2]

Pro se pleadings are construed liberally; however, a litigant such as the plaintiff still must follow basic procedural rules governing all litigants. *See Ogden v. San Juan County*, 32 F.3d 452, 455 (10th Cir.1994), *cert. denied,* —— U.S. ——, 115 S.Ct. 750, 130 L.Ed.2d 650 (1995); *Green v. Dorrell*, 969 F.2d 915, 917 (10th Cir.1992), *cert. denied,* —— U.S. ——, 113 S.Ct. 1336, 122 L.Ed.2d 720 (1993). Pursuant to District of Kansas Rule 206(c), "[a]ll facts on which a motion or opposition is based shall be presented by affidavit, declaration under penalty of perjury, and/or relevant portions of pleadings, depositions, answers to interrogatories and responses to requests for admissions." McDiffett does not submit his own affidavit

---

**2.** The log reflects testing occurred on the following dates: July 16, 1992; July 20–21, 1992; September 25–26, 1992; September 29, 1992; October 1, 1992; October 29–31, 1992; November 2, 1992; January 21–22, 1993; February 10–11, 1993; and February 14, 1993. The log reflects McDiffett was tested on July 20, 1992 (positive); September 26, 1992 (negative); September 29, 1992 (positive); October 30, 1992 (negative); January 21, 1992 (two tests: first test was positive and the second was negative); and February 14, 1993 (positive). (Defs.' Cross–Motion for Summary Judgment, Ex. 1B.)

attesting to the number of urinalysis tests he underwent during the relevant time frame. In the only affidavit the plaintiff provides, the affiant does not have personal knowledge of the number of drug tests the plaintiff underwent. The affiant only attests that she overheard McDiffett say how many drug tests to which he had been subjected. Rule 206(c) requires that affidavits "be made on personal knowledge and by a person competent to testify to the facts stated which shall be admissible in evidence." *See Thomas v. International Business Mach.*, 48 F.3d 478, 485 (10th Cir.1995) (quoting *Garside v. Osco Drug, Inc.*, 895 F.2d 46, 50 (1st Cir.1990)) (A movant may not rely upon an affidavit containing "hearsay testimony that would be inadmissible at trial ... because '[a] third party's description of [a witness'] supposed testimony is not suitable grist for the summary judgment mill.' "). McDiffett has failed to comply with fundamental procedural rules governing summary judgment motions. Nevertheless, in the context of this case, the number of drug screenings given—two or three—does not affect the outcome.

The defendants agree that the urinalysis conducted on September 29, 1993 was *not random;* however, they disagree that the test was conducted to harass the plaintiff. The defendants contend their actions were consistent with IMPP 12–124, which provides:

> While all inmates/parolees are subject to drug abuse and/or intoxicant testing, the drug screening program shall target the following:
>
> 1. Inmates/parolees suspected of contraband drug usage and/or being under the influence of alcohol or drugs.
>
> 2. High risk group including:
>
> a. Inmates/parolees with a history of drug or alcohol abuse.
>
> b. Groups of inmates by living/work/program assignment where a pattern of drug and/or alcohol abuse is discovered.
>
> c. Inmates whose custody/program increases the potential for contact with contraband drugs and/or alcohol (includes furloughs, work release, and community work assignments).
>
> 3. A representative number of inmates from the total population, chosen by a random sample method.

(Memo. in Support of Pltf.'s Motion for Summary Judgment, Ex. A, at 1–2.)

The evidence before this court does not support the plaintiff's claim that the testing occurred only to harass him in violation of IMPP 12–124. The September 29 testing was ordered because McDiffett was suspected of smoking marijuana in his cell a couple of days prior. Additionally, the defendants considered the plaintiff to be high risk because of a history of drug abuse. For example, EDCF officials suspected McDiffett of possessing marijuana on July 20, 1992, and referred the matter to the Butler County District Attorney. The plaintiff's urinalysis test on that date was positive. On October 9, 1992, McDiffett was charged in Butler County with unauthorized possession of contraband in a penal institution. The plaintiff subsequently pled nolo contendere and was convicted.

■■■ If McDiffett is challenging the provision of IMPP 12–124 that targets a certain group of inmates for nonrandom drug screening, that challenge also fails.

Although prisoners retain many constitutional rights, *Bell v. Wolfish*, 441 U.S. 520, 545 [99 S.Ct. 1861, 1877, 60 L.Ed.2d 447] ... (1979), it is recognized that incarceration necessarily limits some rights due to considerations inherent in a penal system, *O'Lone v. Estate of Shabazz*, 482 U.S. 342, 348 [107 S.Ct. 2400, 96 L.Ed.2d 282] ... (1987). A prison regulation which operates to burden constitutional rights will be upheld as valid if the regulation is reasonably related to a legitimate penological interest. *See Turner v. Safley*, 482 U.S. 78, 79 [107 S.Ct. 2254, 96 L.Ed.2d 64] ... (1987) (standards set forth for reviewing constitutionality of prison regulations); *Frazier v. Dubois*, 922 F.2d 560 (10th Cir. 1990) (*Turner* standards quoted and applied).

*Kimball v. Stotts*, No. 92–3413, 1993 WL 455266, *1 (D.Kan. Oct. 27, 1993).

Targeting certain inmates for drug screening, as set forth in IMPP 12–124, is reasonably related to a legitimate penological interest. "[T]he duty to keep drugs out of a prison is part of prison administrators' responsibility to maintain a correctional center's institutional security." *Romo v. Champion*, 46 F.3d 1013, 1017 (10th Cir.1995); *see Jacobs v. Bonner*, No. 91–3143, 1992 WL 24425, * (D.Kan. Jan. 17, 1992) (prisons have a "substantial interest in monitoring and controlling the use of alcohol and drugs in the prison setting"). Furthermore, "[p]rison administrators ... should be accorded wide-ranging deference in the adoption and execution of policies and practices that in their judgment are needed to preserve internal order and discipline and to maintain institutional security." *Bell v. Wolfish*, 441 U.S. 520, 547, 99 S.Ct. 1861, 1878, 60 L.Ed.2d 447 (1979).

McDiffett also argues the defendants violated his due process rights by failing to follow statutory rules, namely, K.S.A. 8–1004. The plaintiff contends that, after a first positive urinalysis test, the defendants erred in disallowing his request for a physician of his choosing to conduct a second drug-screening test. K.S.A. § 8–1004, which pertains to the testing of drivers allegedly under the influence of alcohol or drugs, has no bearing in this matter.

McDiffett does not state a cognizable claim under Section 1983 concerning the urinalysis testing.

### III. *Administrative Segregation*

With regard to administrative segregation, McDiffett again argues the defendants violated his due process rights by failing to following their own rules. The plaintiff argues that the defendants failed to provide him with a presegregation hearing as required under K.A.R. 44–14–303(b). He also claims the defendants erred in confining him to administrative segregation between the time he tested positive for drugs and the time he was found guilty of the drug charge at a disciplinary hearing. Although acknowledging that IMPP 12–124 authorizes disciplinary action for a positive test result, McDiffett argues that no written policy authorizes placing an inmate in administrative

segregation before the disciplinary hearing to determine guilt or innocence.

K.A.R. 44–14–303(b) states that "inmates placed in segregation shall be provided with a hearing prior to placement in order to provide them with an opportunity to present objections, explanation or reasons as to why such a placement should not be effected." McDiffett attaches a copy of his administrative segregation report, which he claims shows he was not allowed to attend the hearing. The report does not support the plaintiff's claim. The report indicates a presegregation hearing was conducted, but not that McDiffett was preventing from attending or from presenting his views at the hearing.

The defendants contend K.A.R. 44–14–302(b), (c), or (g) authorized McDiffett's placement in administrative segregation prior to the disciplinary hearing to determine guilt. Subsections (b) permits the administrative segregation of inmates pending the results of an investigation; subsection (c) authorizes administrative segregation pending a disciplinary hearing if necessary to maintain institutional security; and subsection (g) allows placing an inmate in administrative segregation if the inmate is a security risk. The defendants assert that the plaintiff's positive test result indicated the presence of contraband at EDCF and that the plaintiff was placed in administrative segregation to contain the threat to security and control that the plaintiff and the contraband posed.

It is recognized that inmates are not entitled to a particular degree of liberty in prison, and that ordinarily a change in an inmate's prison classification to administrative segregation does not deprive the inmate of liberty. *Templeman v. Gunter*, 16 F.3d 367, 369 (10th Cir.1994). There is no right independently protected under the Due Process Clause to remain in the general prison population. *Hewitt v. Helms*, 459 U.S. 460, 468, 103 S.Ct. 864, 869, 74 L.Ed.2d 675 (1983); *Bailey v. Shillinger*, 828 F.2d 651, 652 (10th Cir.1987). Prison officials have broad administrative and discretionary authority to remove inmates from the general prison population. *Hewitt*, 459 U.S. at 467–

68, 103 S.Ct. at 869–70. A decision by prison officials to place the inmate in nonpunitive administrative segregation does not implicate the Due Process Clause of the Fourteenth Amendment unless the confinement presents "the type of atypical, significant deprivation in which a state might conceivably create a liberty interest." *Sandin v. Conner,* —— U.S. ——, ——, 115 S.Ct. 2293, 2301, 132 L.Ed.2d 418 (1995). *Sandin* makes clear that an inmate's segregated confinement is not such a deprivation. *See Rush v. McKune,* 888 F.Supp. 123, 125 (D.Kan.1995) (Kansas prison regulations do not create protected liberty interest); *Lloyd v. Suttle,* 859 F.Supp. 1408, 1410 (D.Kan.1994) (same). The *Sandin* decision applies retroactively. *Mujahid v. Meyer,* 59 F.3d 931, 932 n. 2 (9th Cir.1995); *Cody v. Jones,* 895 F.Supp. 431, 441 n. 13 N.D.N.Y.1995) (same); *Uzzell v. Scully,* 893 F.Supp. 259, 263 n. 8 (S.D.N.Y. 1995) (same).

McDiffett's administrative segregation claim does not rise to the level of a constitutional violation and is not a viable claim under Section 1983.

### IV. *Disciplinary Hearings*

McDiffett also complains the defendants' improper handling of the disciplinary hearings violated due process, constituted cruel and unusual punishment, subjected him to double jeopardy, and violated his right to contact visitation. The plaintiff again fails to follow D.Kan. Rule 206 in supporting his factual allegations. Rather, he makes broad, conclusory statements that are not supported in the record. The basic facts as supported by the record follow.

At the initial disciplinary hearing on October 13, 1992, McDiffett moved to dismiss the charge, alleging harassment and alleging the hearing officer lacked knowledge of IMPP 12–124. When defendant Keckler, the hearing officer, denied the motion, McDiffett asked for a continuance in order to seek a different hearing officer. Keckler denied the request; however, based upon the plaintiff's request for counsel, the hearing was continued.

The hearing resumed on October 21, 1992, with Keckler again presiding. Based upon the reporting officer's notarized disciplinary report and upon the urinalysis test results, Keckler found the plaintiff guilty and sentenced him accordingly. When it was brought to Keckler's attention that the reporting officer was not present at the hearing as required pursuant to K.A.R. 44–13–404(b), Keckler spoke with defendant Goodwin, an assistant to the disciplinary administrator. Upon Goodwin's advice, Keckler withdrew the finding of guilt and the sentence imposed. Keckler then continued the hearing. He denied a request from an attorney with Legal Services for Prisoners that McDiffett be released from segregation pending a new hearing.

The hearing resumed on October 27, 1992, with defendant R.C. Vosburgh presiding. Vosburgh denied the plaintiff's motion to dismiss based upon violations previously alleged; however, Vosburgh continued the case because McDiffett's counsel was not present.

Defendant Yonts, disciplinary administrator for EDCF, dismissed the case on October 30, 1992. McDiffett remained in administrative segregation, and he was recharged with the same offense later that day.

A hearing was held on November 3, 1992, at which Vosburgh presided. Vosburgh denied the plaintiff's motions for a continuance and for defendant Yonts to testify. McDiffett was found guilty and sentenced to 45 days disciplinary segregation, 30 days restriction of privileges, a $10.00 fine, and restitution for the drug test in the amount of $3.90.

The plaintiff contends the defendants' failure to follow prison regulations violated his due process. For example, McDiffett complains that Vosburgh improperly failed to call Yonts as a witness. Pursuant to K.A.R. 44–13–405a(b), "[t]he hearing officer shall have broad discretion in permitting or denying the witness request. In exercising that discretion, the hearing officer shall balance the inmate's request and wishes against the needs of the prison." The defendants assert that Vosburgh properly declined to call Yonts "to prevent the undermining of authority"; "to avoid irrelevant, immaterial, or unnecessary testimony or evidence"; and "to reduce the chances of seriously inflaming

tension, frustration, resentment and antagonism in the relationship between inmates and institution personnel." K.A.R. 44–13–405a(a)(3), (7), (11). Not calling Yonts as a witness was within the hearing officer's discretion.

The defendants acknowledge a few irregularities, such as conducting the hearing in the absence of the reporting officer and dismissing the charge without making a factual finding; however, the defendants insist any irregularities were corrected according to the appropriate administrative process.

The plaintiff's claims do not implicate constitutional due process. Because his cruel and unusual punishment claim is based upon being segregated with due process, that claim also must fail.

 Additionally, McDiffett declares the defendants subjected him to double jeopardy. The plaintiff was not convicted twice of the same charge; the first finding of guilt was withdrawn. Moreover, "[p]rison disciplinary hearings are not part of a criminal prosecution, and therefore do not implicate double jeopardy concerns." *Lucero v. Gunter,* 17 F.3d 1347, 1351 (10th Cir.1994) (citations omitted).

 Based upon a denial of contact visits with family and friends for 90 days, the plaintiff asserts a constitutional deprivation, presumably based upon the First Amendment freedom of association. "Although the United States Supreme Court has not determined whether inmates enjoy a constitutional right to reasonable visitation, it is settled that contact visitation may be limited or even prohibited by prison authorities." *Jiminez v. Stotts,* No. 92–3042, 1994 WL 377021, *2 (D.Kan. Jun. 27, 1994) (citing *Block v. Rutherford,* 468 U.S. 576, 587–88, 104 S.Ct. 3227, 3233–34, 82 L.Ed.2d 438 (1984)). This district previously rejected an EDCF inmate's First Amendment challenge to being allowed only noncontact visitation for 90 days after a positive drug test. *Kimball v. Stotts,* No. 92–3413, 1993 WL 455266 (D.Kan. Oct. 27, 1993).

IT IS, THEREFORE, BY THE COURT ORDERED that plaintiff Shawnee McDiffett's motion for summary judgment (Doc. 45) is denied and that the defendants' cross-motion for summary judgment (Doc. 64) is granted.

Copies of this order shall be mailed to counsel of record for the parties.

**IT IS SO ORDERED.**