Boulanger v. Brodeur                    CV-95-572-SD  04/22/96

**UNITED STATES DISTRICT COURT FOR THE
DISTRICT OF NEW HAMPSHIRE**


Gerard Boulanger

    v.                                     Civil No. 95-572-SD

Paul Brodeur, et al.



# REPORT AND RECOMMENDATION


The plaintiff, Gerard Boulanger, brings the underlying 42
U.S.C. § 1983 action against defendants, the Commissioner of the
New Hampshire Department of Corrections and the Warden of the New
Hampshire State Prison.  The action is premised on defendants'
(1) failure to provide plaintiff a copy of his disciplinary
report, (2) denying plaintiff visitation rights,[1] and (3) failure
to comply with required and dictated prison policies, procedures
and directives.  Before the court is the plaintiff's Motion for a
Temporary Restraining Order and/or Preliminary Injunction
(document no. 8).

---

[1] Defendants represent that plaintiff's visitation
privileges with family members have been restored.  However,
plaintiff bases his "visitation" arguments on his inability to
visit with non-family friends.

BACKGROUND

Plaintiff is currently incarcerated at the New Hampshire State Prison. On or about August 14, 1995, plaintiff submitted a urine sample for testing at the Department of Corrections' Drug Testing laboratory in Laconia, New Hampshire. This urine sample subsequently tested positive for THC (tetrahydrocannabinol), a chemical component of marijuana. On August 28, 1995, the plaintiff was informed that a disciplinary report had been prepared stemming from the urine sample results. Plaintiff states, however, that he never received a copy of the disciplinary report nor a copy of the hearing results. The plaintiff pled guilty to the disciplinary infraction and received a sentence of 100 hours of extra duty, 50 days loss of canteen privileges, and 10 days punitive segregation.

Following his guilty plea and the imposition by prison personnel of sanctions, plaintiff alleges that he received a letter, on October 26, 1995, from a friend. This letter stated that the friend was told, by prison personnel, that plaintiff had lost his visitation privileges for one year. According to the plaintiff, representations were also made to him, after his guilty plea, that if an inmate receives a disciplinary report for positive THC urine test results, that inmate will lose visitation privileges for one year. Plaintiff allegedly requested

clarification on the particular visitation policy in question and urine sampling procedures used at the prison from defendants to no avail.

The instant lawsuit followed, and on March 25, 1996 plaintiff submitted a motion for temporary restraining order and/or preliminary injunction. In support of this motion, plaintiff avers that his visitation privileges have been denied for the last seven months, "constituting serious degeneration with family and friends." Plaintiff's Motion for Temporary Restraining Order and/or Preliminary Injunction at page 3. Plaintiff requests the court to order the "defendants to restore fully [his] visiting privileges." Id. at page 4.

On April 17, 1996 the court conducted a hearing on the motion for a preliminary injunction, during which it entertained legal arguments as well as testimony from witnesses.

DISCUSSION

"The purpose of a preliminary injunction is to preserve the status quo, freezing an existing situation so as to permit the trial court, upon full adjudication of the case's merits, more effectively to remedy discerned wrongs." CMM Cable Rep., Inc. v. Ocean Coast Properties, Inc., 48 F.3d 618, 620 (1st Cir. 1995)(citing Chalk v. United States Dist. Court Cent. Dist. of

3

California, 840 F.2d 701, 704 (9th Cir. 1988); American Hosp. Ass'n v. Harris, 625 F.2d 1328, 1330 (7th Cir. 1980)).

In determining whether to grant a preliminary injunction, this court considers four factors. Legault v. aRusso, 842 F. Supp. 1479, 1485 (D.N.H. 1994). The four factors are: "(1) the likelihood of the movant's success on the merits; (2) the potential for irreparable harm to the movant; (3) a balancing of the relevant equities, i.e., the `hardship to the nonmovant if the restrainer issues as contrasted with the hardship to the movant if interim relief is withheld,' Narragansett Indian Tribe v. Guilbert, 934 F.2d 4, 5 (1st Cir. 1991); and (4) the effect on the public interest of a grant or denial of the injunction." Gately v. Massachusetts, 2 F.3d 1221, 1224-25 (1st Cir. 1993); see Campbell Soup Co. v. Giles, 47 F.3d 467, 470 (1st Cir. 1995); Sunshine Development, Inc. v. F.D.I.C., 33 F.3d 106, 110 (1st Cir. 1994); Aoude v. Mobil Oil Corp., 862 F.2d 890, 892 (1st Cir. 1988). Although each of the aforementioned factors is significant, the sine qua non of the preliminary injunction standard is whether the movant is likely to succeed on the merits. Legault, 842 F. Supp. at 1485. Given that the likelihood of the movant's success is the essential element of the quadripartite test, the court starts with a consideration of this component. Weaver v. Henderson, 984 F.2d 11, 12 (1st Cir.

4

1993); <u>Lancor v. Lebanon Housing Authority</u>, 760 F.2d 361, 362 (1st Cir. 1985).

Within his complaint, plaintiff states that visitation privileges are protected under the First Amendment (right to freedom of association), Eighth Amendment (right against cruel and unusual punishment), and Fourteenth Amendment (right to due process of the law). As support for his contention that he was denied due process, plaintiff suggested during the course of the preliminary injunction hearing conducted on April 17, 1996 that he was never notified that his plead of guilty to the particular disciplinary infraction would result in his loss of visitation rights.

Defendants represent that plaintiff was aware, or should have been aware, of the visitation consequences in light of a memorandum distributed throughout the prison. This memorandum informed the prison staff, prison inmates, and prison visitors that "any inmate found in possession of drugs, or whose urine test is positive for drugs, . . . , will have his visits suspended for one year." Exhibit A to Defendants' Objection to Plaintiff's Motion for Temporary Restraining Order and/or Preliminary Injunction (document no. 13). Plaintiff denies ever receiving or viewing this memorandum. Consequently, he stands by his due process violation contention.

5

In determining whether a prisoner's procedural due process rights have been violated, a court must consider whether the prisoner has a liberty or property interest with which the state has interfered. Kentucky Dept. of Corrections v. Thompson, 490 U.S. 454, 460 (1989). A protected liberty interest may originate from either the Due Process Clause itself or from the laws of the states. Id.

A prisoner's interest in visitation is not guaranteed directly by the Due Process Clause. Id. Thus, if such an interest exists at all, it must derive from state law.

Specific state implemented law or regulations may implicate a procedurally protected liberty interest if (1) the state statute or regulation narrowly restricts the power of prison officials to levy the deprivation, i.e., give the inmate a kind of right to avoid it, and (2) the liberty interest at issue is one of "real substance." Sandin v. Conner, 115 S. Ct. 2293, 2297-2302 (1995). However, the only constitutionally protected interest which might be created by a state law or regulation is one to be free from a condition which results in an "atypical and significant hardship" in relation to the usual incidents of prison life. See id. at 2300.

In considering the impact of any state imposed restrictions on inmates' daily living, the Supreme Court has stated that

6

punishment or restrictions imposed by prison personnel will not violate due process unless such punishment or restrictions are "qualitatively different from the punishment characteristically suffered by a person convicted of a crime." Vitek v. Jones, 445 U.S. 480, 493 (1980). Discipline, imposed by prison officials in response to a prisoner's use of controlled substances, is certainly "within the expected parameters of the sentence imposed by a court of law." Sandin, 115 S. Ct. at 2301.

An inability to have unfettered visitation is also within the range of punishment a prisoner might expect to receive while incarcerated. Kentucky Dept. of Corrections, 490 U.S. at 460. Such a restriction is not atypical and unusually harsh compared to the customary circumstances expected by a prison sentence. Certainly, one's detachment from society is a basic incident of imprisonment and even when visitation is allowed, it is quite often narrowly circumscribed. See id. at 454 (denial of prison visitation with mother characterized as well within ordinarily contemplated terms of imprisonment). In fact, the court is cognizant that prison officials must be afforded broad discretion in maintaining their facilities and in managing, disciplining and punishing inmates under their supervision. Rhodes v. Chapman, 452 U.S. 337, 351-352 (1981)(discussing deference to prison officials and legislators with regard to prison conditions);

7

<u>Hudson v. McMillian</u>, 503 U.S. 1, 6, 112 S. Ct. 995, 999-1000 (1992)(discussing deference to prison officials in use-of-force cases).

In this case, plaintiff points to no state law or other regulation which vests him with a visitation liberty interest. Irrespective of plaintiff's failure to reference an applicable law or regulation, the court is cognizant that there is, in fact, no state law or prison regulation which creates a liberty interest in visitation. Moreover, revocation of visitation privileges, for disciplinary reasons, does "not present the type of atypical, significant deprivation in which a state might conceivably create a liberty interest." <u>Sandin</u>, 115 S. Ct. at 2301. Plaintiff in this case simply has not established that he is likely to succeed on the merits of his due process claim stemming from the denial of visitation privileges, with non-family members, for one year. His "<u>subjective</u> expectations are not dispositive of the liberty-interest analysis." <u>Dominique v. Weld</u>, No. 95-1465, slip op. at 12 (1st Cir. Jan. 18, 1996)(citing <u>Sandin</u>, 115 S. Ct. at 2301 n. 9).

No doubt, "[p]risoners do not shed all constitutional rights at the prison gate." <u>See</u> <u>Wolff v. McDonnell</u>, 418 U.S. 539, 555, 94 S. Ct. 2963, 2974, 41 L.Ed.2d 935 (1974). Nevertheless, a denial of visitation for plaintiff, following his positive urine

8

test for THC, is well within the restrictions envisioned or contemplated by a prison sentence.  Kentucky Dept. of Corrections, 490 U.S. at 461.  "`Lawful incarceration, [after all,] brings about the necessary withdrawal or limitation of many privileges and rights, a retraction justified by the considerations underlying our penal system.'"  Sandin, 115 S. Ct at 2301 (Jones v. North Carolina Prisoners' Labor Union, Inc., 433 U.S. 119, 125, 97 S. Ct. 2532, 2537, 53 L.Ed.2d 629 (1977)(quoting in turn Price v. Johnston, 334 U.S. 266, 285, 68 S. Ct. 1049, 1059, 92 L.Ed. 1356 (1948))).

Plaintiff has also premised his request for a preliminary injunction on rights afforded by the Eighth Amendment.  However, a restriction on visitation is not a condition of confinement so reprehensible as to be considered inhumane under contemporary standards or one, for that matter, that deprives the plaintiff of a minimal civilized measure of the necessities of life.  See Hudson, 503 U.S at 6, 112 S. Ct. at 999-1000; Wilson v. Seiter, 501 U.S. 294, 298 (1991).  Plainly stated, prisoners have no constitutional right to visitation under the Eighth Amendment. See Bellamy v. Bradley, 729 F.2d 416, 420 (6th Cir. 1984), cert. denied, 469 U.S. 845 (1984).  Consequently, plaintiff's contention that prison personnel inflicted cruel and unusual punishment by restricting his visitation for one year is fatuous.

9

To the extent the plaintiff asserts a claim that denial of his visitation privileges abridged his First Amendment rights to association, such a claim is summarily rejected based upon the discussion concerning due process rights previously noted. See McDiffett v. Stotts, 902 F. Supp. 1419, 1427 (D.Kan. 1995)(rejecting argument the First Amendment freedom of association is implicated when visitation rights are restricted).

Having determined that plaintiff is not likely to succeed on the merits of his "visitation" claim, the court need not consider the remaining preliminary injunction factors involving potential for irreparable injury, the relevant equities, or the effect on the public interest. See Jackson v. Fair, 846 F.2d 811, 815 (1st Cir. 1988).

Aside from the consideration of whether visitation is a right protected under the constitution, the defendants have sufficiently established that plaintiff had notice of the prison drug policies that were in effect at the time of his disciplinary infraction. Specifically, memoranda from Warden Cunningham (Exhibits A, D and F of Defendants' Objection to Plaintiff's Motion for Temporary Restraining Order and/or Preliminary Injunction) set forth the manner with which inmates will be dealt if involved with drugs. Further, following the hearing testimony of Unit Manager Leo Kneeland and Cpl. Ralph Beaman, the court is

10

content that such memoranda were placed in location(s) where inmates, including plaintiff, were apprised of the policies and consequences concerning drugs in prison. Succinctly stated, plaintiff received sufficient process prior to suspension of his visitation privileges. Like other inmates at the New Hampshire State Prison, plaintiff was aware, or should have been aware, of the drug policies in place at the prison.

CONCLUSION

The court has carefully considered the parties' legal arguments, the testimony by the witnesses, and the various exhibits. Without speculating into particular circumstances in which incidents of prison life might touch on due process rights, this court concludes that plaintiff's contention that visitation is one such circumstance is without merit. Plaintiff's denial of visitation should not be characterized as atypical or one which "work[s] a major disruption in his environment." See Sandin, 115 S. Ct. at 2301.

Interestingly, plaintiff here has, in fact, not been denied all visitation. A memorandum issued by Warden Michael Cunningham on March 4, 1996 (Defendant's Exhibit F) states that a prisoner "found in possession of drugs, or whose urine test is positive for drugs . . . will have his visits of Category 1 visitors

11

suspended for thirty (30) days and Category 2 visitors suspended for one year." Defendant's Exhibit F to Objection to Plaintiff's Motion for Temporary Restraining Order and/or Preliminary Injunction (document no. 13). Based on the memorandum, plaintiff is currently entitled to receive visitation from Category 1 visitors *i.e.* immediate family.

Plaintiff's continued denial of visitation from category 2 persons has not resulted in the deprivation of any necessities or affected the duration of his sentence. Consequently, the plaintiff has no federally protected interest in having visitation following a disciplinary infraction which involved a positive urine test for drug use. Moreover, the court is content that defendants made aware to plaintiff the consequences and ramifications on visitation privileges deriving from detection of drugs in the prison.

Plaintiff's Motion for Temporary Restraining Order and/or Preliminary Injunction (document no. 8) requesting the court to order the defendants to restore his visiting privileges should be denied.

Any objections to this Report and Recommendation must be filed within ten days of receipt of this notice. Failure to file objections within the specified time waives the right to appeal

the district court's order.  See Unauthorized Practice of Law
Committee v. Gordon, 979 F.2d 11, 13-14 (1st Cir. 1992); United
States v. Valencia-Copete, 792 F.2d 4, 6 (1st Cir. 1986).


                                                     _____
                                                     James R. Muirhead
                                                     United States Magistrate Judge

Date:   April 22, 1996

cc:     Gerard Boulanger
        Martin P. Honigberg, Esq.