**Ronald E. SLEDGE, Plaintiff,**

v.

**William L. CUMMINGS, et al., Defendant.**

**No. CIV. A. 94–3465–KHV.**

United States District Court, D. Kansas.

Feb. 25, 1998.

Michael F. Delaney, Spencer, Fane, Britt & Browne, Kansas City, MO, Jeannie M. DeVeney, Spencer, Fane, Britt & Browne, Overland Park, KS, for Ronald E. Sledge, plaintiff.

James W. Coder, Lawrence J. Logback, Office of Attorney General, Topeka, KS, Kevin D. Case, Smithyman & Zakoura, Chtd., Overland Park, KS, for William L. Cummings, Secretary of Corrections, Michael A. Nelson, Warden of EDCF, defendants.

## *MEMORANDUM AND ORDER*

VRATIL, District Judge.

On November 17, 1994, plaintiff brought suit under 42 U.S.C. § 1983, alleging that Michael A. Nelson violated his rights to free exercise of religion under the First Amend-

ment to the United States Constitution by (1) enforcing a policy of the Department of Corrections [DOC] which prohibited the wearing of religious head wear in common areas of the correctional facility; (2) preventing him from attending Islamic prayer services; and (3) preventing him from observing Ramadan.[1] This matter comes before the Court on defendants' renewed *Motion For Summary Judgment* (Doc. # 89) filed December 18, 1997. For reasons stated more fully below, the Court finds that the motion should be sustained.

### Factual Background

The following facts are uncontroverted or, where controverted, viewed in the light most favorable to plaintiff.[2]

The time was 1994. The place was El Dorado Correctional Facility [EDCF] in El Dorado, Kansas, where plaintiff was an inmate and Michael A. Nelson was Warden. On January 21, plaintiff submitted a Religious Needs Assessment Form which revealed that he adhered to the Islamic faith. As part of his religious faith, plaintiff was required to meditate and pray before Juma prayer services on Fridays. Plaintiff conducted this ritual in his cell and continued to meditate while he proceeded to prayer services. Wearing the Kufi—a small, round head covering which has religious significance for Muslims[3]—was a necessary part of this ritual.

On one occasion during the month of February, while plaintiff was en route from his cell to prayer services, a prison guard ordered him to remove his Kufi. In doing so the guard acted pursuant to EDCF General Order 23–101 VII(C). That policy allowed liturgical apparel (skullcaps, head shields, prayer shawls, etc.) to be worn during religious activity and in cells, "as conforms with established procedures for maintaining security, safety and orderly conditions in the facility," but required that religious head wear be carried (not worn) to religious ser-

vices. Keith Barnes, EDCF's Gang Intelligence Officer, explained that religious head wear may be used to conceal and transport contraband, and gang members wear it to show gang affiliation. The record contains no evidence, however, that EDCF or other DOC prisoners have used religious head wear to conceal or transport contraband.

On February 9, plaintiff made a written request that he be allowed to participate in Ramadan, an Islamic holiday. Ten days later, on February 19, he filed an administrative grievance which complained about the manner in which EDCF policy limited him in wearing the Kufi. The grievance explained that requiring plaintiff to remove his Kufi to proceed to services was disruptive and destroyed the spiritual value of his worship, and that "it is now Ramadon [sic] and I have not attended Juma pray [sic] sence [sic] the first experience I had with an officer running [sic] up behind me telling me to remove my Koofi [sic] and concel [sic] it."

Before February 25, plaintiff made several oral requests that his name be added to the callout list for weekly prayer services. EDCF policy requires inmates to submit such requests in writing. On Friday, February 25, plaintiff made such a request in writing. According to plaintiff, the prison chaplain told him at that time that he would be able to attend services "right away." According to the chaplain, if an inmate submitted a request on a Friday, an approval would not issue until the next day at the earliest. In any event, plaintiff attempted to attend services on February 25, the very day of his written request. Because plaintiff's name was not on the callout list, a prison guard prevented him from attending services and issued a disciplinary report which charged that plaintiff had disobeyed his direct order that plaintiff go to his work assignment rather than services. Plaintiff denies that he received an order not to attend services.

---

1. On January 26, 1998, plaintiff voluntarily dismissed defendant William L. Cummings. See *Plaintiff's Response To Defendants' Motion For Summary Judgment* (Doc. # 100) filed January 26, 1998, n. 1. This order therefore addresses only those issues which pertain to the remaining defendant, Michael A. Nelson.

2. The Court incorporates much of the factual summary contained in its previous *Memorandum and Order* (Doc. # 52) filed April 29, 1997. *See Sledge v. Cummings*, No. 94–3465–KHV, 1997 WL 232557 (D.Kan. Apr.29, 1997).

3. *See Muhammad v. Lynaugh*, 966 F.2d 901, 902 n. 1 (5th Cir.1992).

An administrative segregation report dated February 26 stated that on February 25, plaintiff had made threatening statements in writing to security officers, inmates and staff at EDCF. Plaintiff denies making any such threat and defendant has not produced them. Allegedly because of the threats, however, defendant placed plaintiff in administrative segregation on February 26.

On March 1, defendant responded to plaintiff's grievance of February 19, reciting General Order 23–101 and noting that plaintiff's name was on the prayer services callout list.[4] On March 4, after a hearing on the disciplinary report of February 25, defendant sentenced plaintiff to 21 days in disciplinary segregation for disobeying a direct order to go to his work assignment rather than prayer services on February 25. Under EDCF policy, inmates who are confined in administrative or disciplinary segregation are not allowed to attend religious services with inmates in the general population. As a result, while plaintiff was in disciplinary segregation, he was not allowed to attend weekly prayer services or Ramadan services[5] with inmates in the general population.

On March 24, defendant sentenced plaintiff to additional time in administrative segregation, purportedly because defendant had received information that plaintiff had said, "I don't want to be a martyr nor the leader of an organized uprising to stand against the administration and it is my greatest wish to prevent such an uprising." The report, signed by Captain R.J. Hendricks, concluded that if plaintiff had the type of influence he perceived, "his activity would crate [sic] a threat to the secure operation of the facility."

Plaintiff filed suit on November 17, 1994, alleging that despite numerous oral and written requests, defendant refused to place his name on the prayer callout list until March 1, to prevent him from attending prayer services and observing Ramadan, which occurred between January 28 and February 28. Plaintiff also alleged that defendant placed him in administrative and disciplinary segregation to prevent him from attending services and to eliminate any contact between plaintiff and the Muslim community, over which he had great influence. Finally, plaintiff alleged that removing the Kufi at any time during meditation is tantamount to rejecting his God, and that EDCF policy which prohibits him from wearing religious head wear on his way to services violates his constitutional rights to free exercise of religion.

Defendant argues that plaintiff did not ask to participate in prayer services until February 25 and denies any improper purpose in segregating plaintiff from the general population. Defendant also argues that the EDCF policy regarding the wearing of religious apparel did not violate any constitutional rights of plaintiff.

**Summary Judgment Standards**

Summary judgment is appropriate if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law. Fed.R.Civ.P. 56(c); *accord Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 247, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986); *Vitkus v. Beatrice Co.,* 11 F.3d 1535, 1538–39 (10th Cir.1993). A factual dispute is "material" only if it "might affect the outcome of the suit under the governing law." *Anderson,* 477 U.S. at 248. A "genuine"

---

**4.** The response was self-contradictory, in that it also stated that plaintiff would *not* be placed on the prayer services callout list. *See* discussion at B(1), *infra.*

**5.** Plaintiff's contention with respect to Ramadan is controverted by plaintiff's own deposition, in which he stated, "D.O.C. kept me from observing Ramadan ... however, I still observed Ramadan." *See Memorandum In Support of Defendants' Motion For Summary Judgment,* (Doc. # 89) filed December 18, 1997, Attachment D (deposition of Ronald Sledge, p. 26 lines 24–25). In his memorandum in opposition to defendant's

motion for summary judgment, plaintiff attempts to create a disputed issue of fact on this issue as follows: "Mr. Sledge admits that he observed Ramadan to the best of his ability in segregation. Mr. Sledge controverts the statement that he was able to fully participate in Ramadan due to the [February 25, 1994, segregation]." *Plaintiff's Response To Defendants' Motion For Summary Judgment* (Doc. # 100) filed January 26, 1998, p. 4, ¶ 14. Plaintiff has not identified any respect in which his alleged inability to "fully" observe Ramadan constituted a material limitation on his First Amendment rights.

factual dispute requires more than a mere scintilla of evidence. *Id.* at 252.

The moving party bears the initial burden of showing that there is an absence of any genuine issue of material fact. *Celotex Corp. v. Catrett,* 477 U.S. 317, 323, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986); *Hicks v. City of Watonga,* 942 F.2d 737, 743 (10th Cir.1991). Once the moving party meets its burden, the burden shifts to the nonmoving party to demonstrate that genuine issues remain for trial "as to those dispositive matters for which it carries the burden of proof." *Applied Genetics Int'l, Inc. v. First Affiliated Securities, Inc.,* 912 F.2d 1238, 1241 (10th Cir.1990); *see also Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.,* 475 U.S. 574, 586–87, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986); *Bacchus Indus., Inc. v. Arvin Indus., Inc.,* 939 F.2d 887, 891 (10th Cir.1991). The nonmoving party may not rest on its pleadings but must set forth specific facts. *Applied Genetics,* 912 F.2d at 1241.

"[W]e must view the record in the light most favorable to the parties opposing the motion for summary judgment." *Deepwater Invs., Ltd. v. Jackson Hole Ski Corp.,* 938 F.2d 1105, 1110 (10th Cir.1991). Summary judgment may be granted if the non-moving party's evidence is merely colorable or is not significantly probative. *Anderson,* 477 U.S. at 250–51. "In a response to a motion for summary judgment, a party cannot rely on ignorance of facts, on speculation, or on suspicion, and may not escape summary judgment in the mere hope that something will turn up at trial." *Conaway v. Smith,* 853 F.2d 789, 793 (10th Cir.1988). Essentially, the inquiry is "whether the evidence presents a sufficient disagreement to require submission to the jury or whether it is so one-sided that one party must prevail as a matter of law." *Anderson* 477 U.S. at 251–52. Ever mindful of these summary judgment standards, the Court now turns to the merits of defendant's motion.

### Analysis

■ In denying defendant's first motion for summary judgment, in reliance on *Werner v. McCotter,* 49 F.3d 1476 (10th Cir.), *cert. denied,* 515 U.S. 1166, 115 S.Ct. 2625, 132 L.Ed.2d 866 (1995), the Court held that the challenged action must further a compelling state interest in the least restrictive manner. In *Werner v. McCotter,* the Tenth Circuit Court of Appeals relied on the Religious Freedom Restoration Act [RFRA], 42 U.S.C.A. § 2000bb *et seq.* After our first order, the Supreme Court in *City of Boerne v. Flores,* —— U.S. ——, 117 S.Ct. 2157, 138 L.Ed.2d 624 (1997), declared that RFRA is unconstitutional. *Boerne* effectively overruled *Werner,* and this Court therefore relies on pre-RFRA precedent which requires only that EDCF policies which affect inmates' free exercise rights be reasonably related to legitimate penological interests. *O'Lone v. Estate of Shabazz,* 482 U.S. 342, 107 S.Ct. 2400, 96 L.Ed.2d 282 (1987). *See also Barko v. Samuels,* No. 91–3346–DES, 1994 WL 747872, *1, n. 1 (D.Kan. Jan.5, 1994)(noting that prior to passage of RFRA, "it was settled that the First Amendment requires that an inmate be afforded a reasonable opportunity to express religious beliefs.").

### A. Religious Head Wear Policy

Defendant argues that the purpose of the religious head wear policy is to prevent inmates from concealing contraband such as drugs and weapons and to minimize conflicts related to gang identification, and that the policy therefore helps to maintain internal security—a legitimate penological interest. Defendant argues that the policy is reasonably related to legitimate penological interests and that prison officials "must have wide latitude within which to make appropriate limitations" to preserve internal discipline and order and to maintain institutional security. *Rogers v. Scurr,* 676 F.2d 1211, 1215 (8th Cir.1982)(upholding policy which prohibited wearing of religious apparel outside prayer meetings, where prison officials provided reasonable justification based on prison discipline and order); *see also Muhammad v. Lynaugh,* 966 F.2d 901, 902 (5th Cir.1992)(upholding similar regulation in light of testimony that Kufi may be used to conceal weapons or other contraband).

Plaintiff disputes the asserted justification for the rule. He argues that an inmate can hide contraband in religious head wear as easily when he is carrying it as he can when he is wearing it. He therefore concludes that valid penological interests would not be

jeopardized if EDCF allowed Muslims to wear Kufis from cells to services. Plaintiff also notes the lack of hard evidence that DOC inmates actually use head wear to carry or conceal contraband. Finally, he challenges the case law on which defendant relies, asserting that it is neither well reasoned nor binding on this Court.

In an attempt to establish a genuine issue of material fact, plaintiff relies on his own affidavit, which basically argues that valid penological interests would not suffer without the head wear policy, that inmates can easily hide contraband when they carry the head wear, and that defendant could change the policy if he wanted to do so. Without more, plaintiff's arguments do not raise a genuine issue for trial regarding defendant's articulated concerns about contraband—including gang affiliation, which plaintiff's affidavit does not address. *Thomas v. Wichita Coca-Cola Bottling Co.,* 968 F.2d 1022, 1024 (10th Cir.)(sufficient evidence pertaining to material issue must be identified by reference to affidavit, deposition transcript or specific exhibit incorporated therein), *cert. denied,* 506 U.S. 1013, 113 S.Ct. 635, 121 L.Ed.2d 566 (1992); *Hanson v. Beloit Newspapers, Inc.,* No. 94-4023-SAC, 1995 WL 646808, *2 (D.Kan. Sept.15, 1995).

■ The Tenth Circuit has noted that a prisoner's right to free exercise is not absolute; rather, the First Amendment requires that he be accorded "a reasonable opportunity to pursue his religion." *Hall v. Maynard,* 989 F.2d 507, 1993 WL 76276, *3 (10th Cir. 1993) (Table). The Tenth Circuit has identified the legal standard which governs our inquiry, as follows:

> An infringement of a constitutional right is valid in prison if it is "reasonably related to legitimate penological objectives." The four factors to consider in making the reasonableness inquiry are 1) whether a valid, rational connection exists between the prison policy and the legitimate governmental interest advanced as justification; 2) whether alternative means of exercising the constitutional right remain open to prisoners; 3) what impact accommodation of the asserted constitutional right will have on guards, other inmates, and the allocation of prison resources generally; and 4) whether alternatives exist that

would accommodate the prisoner's rights at little cost to valid prison interests.

*Id.* (citing *Turner v. Safley,* 482 U.S. 78, 107 S.Ct. 2254, 96 L.Ed.2d 64 (1987)); *See also Mosier v. Maynard,* 937 F.2d 1521, n. 2 (10th Cir.1991), *cert. denied,* 510 U.S. 895, 114 S.Ct. 260, 126 L.Ed.2d 212 (1993).

■ In this case, the Court finds as a matter of law that defendant's policy is a reasonable means of accomplishing legitimate penological interests at EDCF. First, the record reveals a valid, rational connection between the policy and EDCF's interest in maintaining internal security; the restriction seeks to prevent inmates from carrying concealed contraband or weapons and displaying gang affiliation. The policy may not be perfectly effective in accomplishing that goal, but the law requires only a rational connection between the policy and the institution's interest in maintaining internal security—a standard which is easily satisfied in this case. Second, plaintiff retains an alternative means of exercising his constitutional rights, in that he may wear his Kufi in his cell and while attending services. Third, in light of the legitimate security concerns described above, allowing plaintiff to wear his Kufi in open areas would impact guards, other inmates, and the allocation of prison resources. Finally, the record suggests no alternative to the head wear policy that would fully accommodate plaintiff's free exercise right at *de minimis* cost to valid penological interests. *See Turner v. Safley,* 482 U.S. at 91.

Accordingly, the Court sustains defendant's motion for summary judgment with regard to plaintiff's First Amendment challenge to the EDCF policy on religious head wear.

**B. Juma Prayer Services and Observance of Ramadan**

**1. The Prayer Services Callout List**

In a case which plaintiff himself prosecuted, the United States District Court for the District of Kansas and the Tenth Circuit Court of Appeals have approved the callout practice. *Sledge v. Cummings,* 69 F.3d 548, 1995 WL 628137 (10th Cir.1995)(Table) *cert. denied,* 517 U.S. 1145, 116 S.Ct. 1440, 134

L.Ed.2d 561 (1996)(requirement that inmate submit form electing to participate in scheduled religious services is reasonable restriction which does not substantially burden inmate's exercise of religion). Defendant argues that he did not deny plaintiff the opportunity to attend weekly prayer services in February of 1994, citing evidence that plaintiff was added to the callout list within days of his written request on February 25. Plaintiff does not challenge the validity of the callout practice, but contends that he asked to be added to the callout list several weeks before February 25. To support this contention, plaintiff cites the Religious Needs Assessment Form of January 21 and the Ramadan request of February 9. Neither document contains a request that plaintiff be added to the callout list.

Plaintiff also cites defendant's response to his administrative grievance on March 1. That response stated both that plaintiff had been added and that he had *not* been added to the callout list. In its *Memorandum and Order* (Doc. # 43) dated November 5, 1996, the Court noted that the word "not" was an obvious typographical error and that defendant's intent was clear in spite of his error. 1996 WL 665450, n. 4. In addition, the error was corrected on March 11, when the disposition of defendant's grievance was affirmed.

■ Finally, plaintiff contends that between January 20 and March 1, he made several verbal requests to be added to the list. Even assuming that plaintiff made such verbal requests, EDCF policy requires such requests to be made in writing. Plaintiff's verbal requests were therefore ineffective and he has failed to establish a genuine issue of fact whether defendant refused to place him on the callout list to prevent him from attending services.

**2. Disciplinary and Administrative Segregation**

Defendant asserts that plaintiff was confined to segregation for legitimate reasons within the authority and discretion of prison officials, and that he did not place plaintiff in segregation to prevent him from attending services or observing Ramadan. *See McDiffett v. Stotts,* 902 F.Supp. 1419, 1425–26 (D.Kan.1995); *Hewitt v. Helms,* 459 U.S. 460, 103 S.Ct. 864, 74 L.Ed.2d 675 (1983).

**a. Plaintiff's Claim That Defendant Used Segregated Confinement To Prevent Him From Attending Juma Prayer Services**

Defendant claims that he confined plaintiff to disciplinary and administrative segregation for legitimate reasons (disobeying the direct order of a prison guard and threatening the secure operation of the facility), and that he is entitled to summary judgment on plaintiff's claim that he segregated plaintiff to keep him from attending services.[6]

The argument that defendant segregated plaintiff for legitimate reasons because he disobeyed a direct order proceeds from the assumption, which plaintiff disputes, that plaintiff received a direct order. Likewise, the argument that defendant confined plaintiff for legitimate reasons because he threatened the secure operation of the facility proceeds from the assumption, which plaintiff disputes, that he made threats regarding the secure operation of the facility.

■ These disputes are not material, however, because plaintiff's placement in segregated confinement was the result of appropriate procedures. Plaintiff does not challenge the procedural sufficiency of either the disciplinary hearing on March 4, 1994, or the administrative segregation procedure (report) dated March 24, 1994. Even if plaintiff were to challenge the procedural fairness of those proceedings, he would fail. To meet

---

**6.** The record contains no affidavit testimony whereby defendant denies that he confined plaintiff in segregation to keep him from attending religious services. It does contain defendant's deposition testimony that "we just wouldn't place [an inmate] in segregation without just cause, and [preventing someone from attending religious services] wouldn't to me be a just cause." *See Plaintiff's Response To Defendants' Motion For Summary Judgment,* (Doc. # 100) filed January 26, 1998, attachment Depo/Nelson (deposition of Michael Nelson, December 18, 1997, p. 42, lines 1–5). Defendant also testified at his deposition that if the only reason for segregation was to prevent the inmate from going to a religious service, "we'd release [him] immediately and someone would probably be disciplined." *Id.* (deposition of Michael Nelson at 42, lines 9–14).

the standards of due process in a disciplinary proceeding, defendant must give plaintiff (1) advanced written notice of the ‘charges; (2) an opportunity, when consistent with institutional safety and correctional goals, to call witnesses and present evidence in his defense; and (3) a written statement by the factfinder of the evidence relied on and the reasons for the disciplinary action. *Mitchell v. Maynard*, 80 F.3d 1433, 1445 (10th Cir. 1996). Moreover, the disciplinary board's decision may be upheld if the evidence supporting the decision is "meager." *Id.* A review of the record in this case reveals that all three elements of this test have been fulfilled, and that the evidence considered by the disciplinary board was more than negligible. Therefore, plaintiff cannot complain of any violation of his due process rights.[7]

Given the disciplinary hearing results and the administrative segregation report, defendant had a legitimate penological reason to place plaintiff in disciplinary and administrative segregation. Courts have upheld policies that prohibit inmates confined in segregation from participating in congregate worship.[8] *See Scott v. Stotts*, No. 92–3310–DES, 1993 WL 290256, *1 (D.Kan. July 15, 1993)("Given the restrictive nature of segregation, non-essential elements of religious observance, including congregate services, may be withheld from inmates in segregation, even where those inmates in general population have access to those elements."); *Allen v. Toombs*, 827 F.2d 563, 567 (9th Cir.1987)(security considerations regarding access to axe, red hot stones, and pitchfork supported restriction that prevented Native American inmates in disciplinary segregation unit from participating in Sweat Lodge Ceremony); *see also Termunde v. Cook*, 684 F.Supp. 255, 261 (D.Utah 1988)(although "group religious experience is basic to an inmate's First Amendment rights," group religious practices may be curtailed or prohibited for legitimate security reasons).[9]

█ Plaintiff does not challenge the reasonableness of EDCF's policy which limited the free exercise rights of prisoners in segregation. He argues that the real question is not whether the restrictions imposed on segregated inmates are appropriate, but whether defendant placed him in segregation for the sole purpose of restricting his free exercise rights. Plaintiff's affidavit purports to state from personal knowledge that defendant "approved my placement in segregation in an effort to limit my religious freedom" and that after the hearing on February 26 he was "sentenced to 21 days in disciplinary segregation ... in order to prevent me from attending religious services." In fact, however, such allegations are not based on plaintiff's personal knowledge and they are insufficient to demonstrate a genuine issue of fact for trial. *Conaway v. Smith*, 853 F.2d 789, 792 (10th Cir.1988)(Rule 56(e) requires affidavit based on personal knowledge, containing facts which would be admissible at trial, and showing that affiant is competent to testify on the matters stated therein); *Hall*

---

7. As for the due process standards applicable to plaintiff's confinement to administrative, or non-punitive, segregation, due process would not be implicated unless the confinement presented the type of atypical, significant deprivation in which a state might conceivably create a liberty interest. *Walling v. Slusher*, 976 F.Supp. 1402, 1405 (D.Kan.1997); *McDiffett v. Stotts*, 902 F.Supp. 1419, 1425–26 (D.Kan.1995). Confinement in administrative segregation is not such a deprivation. *Sandin v. Conner*, 515 U.S. 472, 115 S.Ct. 2293, 132 L.Ed.2d 418 (1995); *Talley v. Hesse*, 91 F.3d 1411, 1413 (10th Cir.1996). *See also Amos v. Nelson*, 923 P.2d 1014, 260 Kan. 652 (1996).

8. Although no such evidence is present in this case, the Court notes a recent case in which the court cited affidavits of two Muslim Imams, who established that an inmate's inability to attend one Juma service did not interfere with his obli-

gations as a practicing Muslim because those obligations could be fulfilled by individual prayer offerings with no adverse consequences. *Boomer v. Irvin*, 963 F.Supp. 227, 230 (W.D.N.Y.1997)(inmate failed to establish that inability to attend Juma services as result of "keeplock" confinement violated rights under RFRA or First Amendment). *Cf. Harris v. Lord*, 957 F.Supp. 471, 475 (S.D.N.Y.1997)(on motion to dismiss, rejecting argument that First Amendment was not violated when defendants prevented Muslim from attending religious services on one occasion).

9. Because the Court has sustained defendant's motion for summary judgment as to the head wear policy, the use of callout lists, and plaintiff's observance of Ramadan, the Court need not address defendant's qualified immunity arguments on those subjects.

*v. Bellmon,* 935 F.2d 1106, 1111 (10th Cir.1991)(nonmovant's affidavits must be based upon personal knowledge and set forth facts that would be admissible in evidence; conclusory and self-serving affidavits are not sufficient).

Plaintiff's affidavit also purports to state from personal knowledge that "I was sentenced to additional time in administrative segregation due to my influence in the Islamic community" and "to prevent me from attending religious services." Again, however, such allegations are not based on plaintiff's personal knowledge and they are insufficient to demonstrate a genuine issue of fact for trial. As noted above, however, defendant had legitimate and reasonable justifications for placing plaintiff in segregated confinement, and the procedures employed complied with due process.

Accordingly, the Court sustains defendant's motion for summary judgment with regard to this aspect of plaintiff's claim.

b. Plaintiff's Claim That Defendant Used Segregated Confinement To Prevent Him From Attending Ramadan

 Defendant also argues that he did not place plaintiff in segregated confinement to prevent him from observing Ramadan. In support of this position, defendant cites the administrative segregation report of February 26, which stated that on February 25, plaintiff had made threatening statements in writing to security officers, inmates and staff at EDCF. Defendant also notes that plaintiff's confinement in segregation, which commenced February 26, occurred only two days prior to the conclusion of the month-long holiday (Ramadan ended on February 28), and that by plaintiff's own admission, he observed Ramadan in 1994. In light of this evidence, defendant insists that he is entitled to summary judgment on the claim that he segregated plaintiff to keep him from observing Ramadan.

Plaintiff denies making any threatening statements. His affidavit states that "[t]his allegation was a pretense for keeping me from attending Islamic services," and that despite a discovery request, defendant "has been unable to produce a copy of the document that he alleges I used to threaten him." Indeed, defendant has not produced a copy of

the alleged threat. Plaintiff also claims that defendant confined him to prevent him from attending services and observing Ramadan.

While the parties disagree whether plaintiff made the threats in question, plaintiff's own testimony reveals that he observed Ramadan in 1994: "D.O.C. kept me from observing Ramadan ... however, I still observed Ramadan." *See Memorandum In Support of Defendants' Motion For Summary Judgment* (Doc. # 89) filed December 18, 1997, Attachment D (deposition of Ronald Sledge, p. 26 lines 24–25). If defendant restricted plaintiff's ability to observe Ramadan in any legally material respect, plaintiff has not identified it on the record. Consequently, plaintiff has failed to establish a genuine issue of material fact on this point and defendant is entitled to summary judgement. Accordingly, the Court sustains defendant's motion for summary judgment with regard to this aspect of plaintiff's claim.

IT IS THEREFORE ORDERED that *Defendants' Motion For Summary Judgment* (Doc. # 89) filed December 18, 1997, be and hereby is SUSTAINED.