SAIFULLAH ABDUL-ALÁZIM *vs.* SUPERINTENDENT,
MASSACHUSETTS CORRECTIONAL INSTITUTION, CEDAR
JUNCTION, & others.[1]

No. 99-P-1302.

Middlesex. December 14, 2001. - November 15, 2002.

Present: RAPOZA, KAPLAN, & BERRY, JJ.

*Constitutional Law,* Freedom of religion, Imprisonment. *Imprisonment.*

This court concluded that the appeal from a grant of summary judgment in an
   inmate's civil action alleging infringement of his right freely to exercise
   his religion under art. 46, § 1, of the Amendments to the Massachusetts
   Constitution was not moot, where there was no writing or proposed regula-
   tion reliably documenting the defendants' new policy permitting a prison
   inmate to wear religious head wear. [451-452]
The judge in a civil action erred in granting summary judgment to the
   defendant prison officials on the ground that a prison regulation prohibiting
   the wearing of religious head wear in the departmental disciplinary unit of
   the prison did not unconstitutionally infringe on the plaintiff inmate's right
   freely to exercise his religion under art. 46, § 1, of the Amendments to the
   Massachusetts Constitution, where the defendants did not meet their burden
   of establishing a reasonable relationship to valid penological interests for
   the restriction on religious head wear in the unit. [452-458]

CIVIL ACTION commenced in the Superior Court Department on
April 15, 1998.

The case was heard by *Charles T. Spurlock,* J., on a motion
for summary judgment.

*Richard C. McFarland* for the defendants.

*Saifullah Abdul-Alázim,* pro se.

BERRY, J. This appeal challenges the entry of summary judg-
ment for the defendant officials of the Massachusetts Cor-

[1]The defendants, named in both their official and individual capacities, are
John Marshall, the (former) superintendent of MCI-Cedar Junction; Mark
Powers, deputy superintendent of MCI-Cedar Junction; and Allison Hallett,
the (former) director of treatment at MCI-Cedar Junction.

rectional Institution at Cedar Junction (MCI-Cedar Junction) on a pro se complaint filed by the plaintiff, Saifullah Abdul-Alázim, an inmate. The litigation involves the inmate's claim that his right freely to exercise his religion under art. 46, § 1, of the Amendments to the Massachusetts Constitution[2] was unconstitutionally infringed when, following his transfer to the prison's departmental disciplinary unit (DDU), he was not allowed to wear a kufi (also referred to in the record as a koofi), a prayer cap used in his practice of the Muslim faith.[3] We reverse the judgment with respect to the claim under art. 46.

1. *Procedural and factual background.* On September 9, 1997, the plaintiff was transferred to the DDU for assaulting one of the correctional staff. With this transfer, restrictions on the articles of personal property that could be possessed in the DDU came into play, and the kufi, which the plaintiff had previously been allowed to possess and wear while he was in the general prison population, was taken from him.[4] The plaintiff wrote to a DDU official requesting that his kufi and prayer book be returned. That request was denied in a letter to the plaintiff stating that "you will receive your K[o]ran, provided it is not a hard cover book (inmates are allowed to have one (1) Bible/religious book). In addition you will be allowed to have one (1) cubic foot of legal/religious materials. Koofies are not allowed in DDU. I trust this explains the rules for DDU regarding

---

[2]The complaint also involved claims under the First Amendment to the United States Constitution, 42 U.S.C. § 1983, the Massachusetts Civil Rights Act (G. L. c. 12, §§ 11H, 11I), and art. 2 of the Declaration of Rights of the Massachusetts Constitution. Although summary judgment entered for the defendants on these claims, the plaintiff limited his appeal to the art. 46 claim. Accordingly, the other claims, which were not briefed, are deemed waived. See Mass.R.A.P. 16(a)(4), as amended, 367 Mass. 921 (1975); *Hunt* v. *Commonwealth*, 434 Mass. 1012, 1012 n.1 (2001).

[3]The judge who ruled on the summary judgment motion did not examine the kufi, and the kufi was not introduced into the record at any other point in the proceedings below. As the kufi was not available for our review, we have relied on the descriptions in the record and the photograph of a kufi reproduced in the record appendix. (This photograph was distributed by the prison authorities. See part 2, *infra.*)

[4]In the DDU, which houses prisoners who have been found guilty of the most serious disciplinary offenses, restrictions are imposed beyond those that apply to the general prison population. The pertinent restriction limiting the possession of items of personal property is set forth in a manual for orientation and transfer to the DDU.

religious materials. I would encourage you to read the DDU Orientation Handbook for further information." Thereafter the plaintiff wrote a series of letters, all to no avail, and he remained without his kufi. On April 15, 1998, the plaintiff filed this complaint and a motion for an injunction. On June 4, 1998, a Superior Court judge granted a preliminary injunction which, in pertinent part, ordered that the plaintiff "shall be permitted to possess and wear a koofi while housed in the [DDU] at MCI-Cedar Junction. Nothing in this order shall prevent Department of Correction personnel from searching plaintiff's koofi in accordance with [departmental] search procedures."

The defendant correctional officers thereupon filed a motion for summary judgment, which came before a different Superior Court judge (the motion judge). With respect to the art. 46 claim, the motion judge first accepted the plaintiff's assertion in his verified complaint that depriving the plaintiff of his kufi constituted a substantial burden on the free exercise of his Muslim religion.[5] The motion judge then concluded that the prison officials had advanced a compelling interest justifying deprivation of the kufi because the prayer cap was an article of clothing within which contraband or weapons could be hidden. In contrast, in granting summary judgment for the defendants on the other claims, the judge analyzed under the reasonable relationship standard the Federal free exercise claims advanced under the First Amendment to the United States Constitution and 42 U.S.C. § 1983. These Federal claims are not involved in this appeal. See note 2, *supra*. The constitutional standard of review under art. 46 is addressed in part 3 of this opinion.

2. *Mootness.* We first address the defendants' contention that the appeal is moot. The defendants argue that there is no actual

---

[5]While it is conceivable that a case could arise in which correctional officials challenge the genuineness of a particular religious practice or the substantiality of a burden imposed by a prison policy on the practice of that religion, this is not such a case. Here, the plaintiff's evidence that the restriction on the ability to wear a kufi cap during prayer substantially burdened the free exercise of the plaintiff's Muslim faith was not challenged by the defendants and stands as law of the case. The defendants offered no countervailing evidence that the manner of ritual for prayer service, which included the wearing of the kufi during prayer, was not an actual tenet of the plaintiff's religion. We therefore address this appeal on the same factual basis as did the motion judge.

pending controversy because, they say, the prison has "changed its policy" and now permits a DDU inmate to wear religious head wear, including a kufi. However, the defendants' presentation in the record of the alluded-to change in policy leaves much to the imagination. The defendants introduced no writing or documentation. Instead, as the sole indicator of a policy change, the defendants' brief states as follows: "In the case at bar, [the plaintiff's] claim for declaratory relief is now moot by virtue of the fact that the DDU policy has changed and [the plaintiff] is now permitted to possess and wear a koofi in the DDU," referencing note 3 of the brief. Note 3, in turn, states: "[the plaintiff's] affidavit of November 16, 1999, indicating the change in DDU policy, is attached to volume two of the Record Appendix. . . . See *Hubrite Informal Frocks, Inc.* v. *Kramer*, 297 Mass. 530, 532 (1937) (proper way to inform court of change in circumstances after disposition of case is through an affidavit)."

Accepting this as the only evidence of the changed policy, it is a most strange way for prison administrators to memorialize and document correctional policy, i.e., by referencing an inmate's affidavit. In any event, the matter is rendered even more curious by the supposed documentation of the changed policy, the inmate's affidavit. The affidavit merely states that sometime near the beginning of 1999, the plaintiff "was informed by a prison captain named John Jones . . . that [the plaintiff] could purchase koofies to possess and wear in the DDU," and that the captain provided "a price list of the koofies."

The inchoate nature of the alluded-to changed prison policy — which, on this record, consists of an inmate's affidavit and an advertisement for the purchase of a kufi — does not provide a solid enough foundation to ensure continuing definition on the issue of an inmate possessing a kufi in the DDU. Thus, in the absence of any submission by the defendants of a writing or a proposed regulation reliably documenting the new policy, this appeal is not rendered moot.[6]

3. *The art. 46 free exercise claim.* The Supreme Judicial

---

[6]We note that the record reflects that the defendants failed to heed a prior adjudication in which an injunction had issued ordering that another inmate be

Court has not addressed the constitutional standard governing review of a prison policy that burdens free exercise rights protected by art. 46, § 1. Given this uncharted issue — and notwithstanding the reasonable relationship standard applied in the context of prison administration by the United States Supreme Court in *Turner* v. *Safley*, 482 U.S. 78, 89-91 (1987), and *O'Lone* v. *Estate of Shabazz*, 482 U.S. 342, 349 (1987), and, subsequent to the Superior Court proceedings in this case, by the Supreme Judicial Court in *Massachusetts Prisoners Assn. Political Action Comm.* v. *Acting Governor*, 435 Mass. 811, 820 (2002) (hereinafter the *Massachusetts Prisoners PAC* case) — the motion judge determined that the art. 46 challenge was governed by the compelling State interest standard. The judge's application of this heightened standard to the art. 46 free exercise claim differed from the analysis of the Federal First Amendment free exercise claims, which were reviewed under the reasonable relationship standard.[7] The difference in

---

allowed to wear his kufi. See Matthews *vs.* Rakiey, Middlesex Superior Court, Civ. A. No. 91-3433 (July 20, 1992). The defendants sought to distinguish that prior case on the basis that at the time the injunction issued, Matthews was housed in the general prison population. However, in an affidavit, Matthews states that, when he was transferred to the DDU, prison officials confiscated his kufi, taking the position that the preliminary injunction did not apply to the DDU and was not a final adjudication. Matthews then filed a motion for contempt. Following that filing, legal counsel for the Department informed Matthews that his kufi would be returned to him in the DDU "and that there was no need for an order of contempt." Matthews wore his kufi in the DDU for close to six years. The defendants here filed nothing rebutting these representations.

We also consider that, even if the matter were deemed moot because of the defendants' expressed willingness, albeit after the entry of two separate injunctions, to allow DDU inmates to purchase kufi prayer caps, the defendants' differing positions in this case and in the prior litigation demonstrate that the potential of an inmate being prohibited from wearing a kufi in the DDU is a matter capable of repetition and one that, to this point, has evaded appellate review. Cf. *Lockhart* v. *Attorney Gen.*, 390 Mass. 780, 783 (1984) (courts have addressed an issue of importance "where it was fully argued on both sides, where the question was certain, or at least very likely, to arise again in similar factual circumstances, and especially where appellate review could not be obtained before the recurring question would again be moot").

[7]In the lower court proceedings, the correctional defendants accepted this compelling State interest standard, but on appeal, have changed their position and urge this court to apply the reasonable relationship standard.

methodology, in the main, is attributable to the separate modes of analysis in the jurisprudence concerning the free exercise of religion under the United States and Massachusetts Constitutions, as most pointedly marked by the formative decision in *Attorney Gen.* v. *Desilets*, 418 Mass. 316, 322 (1994),[8] in which the court held that, for art. 46 constitutional analysis, the standard is whether a restriction "substantially burdens [the plaintiff's] free exercise of religion, and, if it does, whether the Commonwealth has shown that it has an interest sufficiently compelling to justify that burden."

However, in contrast to this standard of strict scrutiny for art. 46 religious rights, in determining the constitutionality of a prison policy that burdened the equally fundamental rights of free speech and association under arts. 1 and 16 of the Massachusetts Declaration of Rights, the court in the *Massachusetts Prisoners PAC* case declined to apply the compelling interest

---

[8]With respect to art. 46 protection for religious rights of the citizenry at large, *Desilets* rejected the Federal free exercise standard first announced in *Employment Div., Dept. of Human Resources* v. *Smith*, 494 U.S. 872 (1990). Our State court, "prefer[ring] to adhere to the standards of earlier First Amendment jurisprudence," held that as a matter of State constitutional jurisprudence, art. 46 was to be analyzed in accord with First Amendment precedent pre-dating the *Smith* case. *Attorney Gen.* v. *Desilets*, 418 Mass. at 321. The Supreme Judicial Court's rejection of, and criticism of, *Smith* was prescient. The constitutional thread of analysis woven in *Smith* unraveled, leaving rends in Federal free exercise jurisprudence. To counter the *Smith* standard, Congress enacted the Religious Freedom Restoration Act of 1993 (RFRA), 42 U.S.C. §§ 2000bb et seq. In RFRA, Congress sought to reinstate the compelling interest standard for laws and regulations affecting the First Amendment free exercise of religion. (In this respect, RFRA mirrors what our Supreme Judicial Court decided in *Desilets*.) However, at least as applied to the States, the RFRA's tenure was abbreviated. Four years after the enactment of RFRA, in *Boerne* v. *Flores*, 521 U.S. 507 (1997), the Supreme Court, on federalism grounds, struck down RFRA as applied to the States.

In the wake of *Boerne*, with respect to prisoners' claims challenging State prison laws and regulations, the Federal courts returned to the *Turner/O'Lone* reasonable relationship standard. However, in September of 2000, Congress, in response to *Boerne*, enacted the Religious Land Use and Institutionalized Persons Act of 2000 (RLUIPA), 42 U.S.C. §§ 2000cc et seq. RLUIPA again sought to reach State prison laws and regulations and reinstated the heightened compelling interest test for claims based on RLUIPA. At present, there are challenges to the validity of RLUIPA. For a history of the interweaving of the United States Supreme Court decisional law, the two congressional Acts, and the effects on State prison regulations, see generally Developments in the Law of Prisons, 115 Harv. L. Rev. 1838, 1891-1915 (2002).

standard. *Massachusetts Prisoners PAC, supra.* Instead, the Supreme Judicial Court employed the more deferential standard of review generally applied in the prison context, which, as defined in *Turner* v. *Safley, supra,* and *O'Lone* v. *Estate of Shabazz, supra,* is that "when a prison regulation impinges on inmates' constitutional rights, the regulation is valid if it is reasonably related to legitimate penological interests." *Massachusetts Prisoners PAC, supra* at 819, quoting from *Turner* v. *Safley, supra* at 89. In reaffirming this more deferential standard of review in the *Massachusetts Prisoners PAC* case, our State court "[acknowledged] the difficulty that prison officials face in the operation of prisons," and expressly rejected the compelling State interest standard for review of laws, regulations and policies involving prison administration: "[C]onsistent with the United States Supreme Court, we apply the reasonableness standard outlined in *Turner*, not [a] heightened scrutiny [standard]." *Massachusetts Prisoners PAC* case, 435 Mass. at 819-820 & n.9.[9,10] Accord *Cacicio* v. *Secretary of Pub. Safety,* 422 Mass. 764, 770 (1996).

---

[9]The reasonableness analysis involves a four-factor inquiry: "(1) Is there a valid, rational connection between the [prison] regulation and the governmental interest put forward to justify it, and is the governmental interest legitimate and neutral; (2) do alternative means of exercising the challenged right remain open to inmates; (3) will accommodating the challenged right have a significant 'ripple effect' on guards, other inmates, and the allocation of prison resources in general; and (4) does an alternative to the regulation exist which would fully accommodate the inmates' rights at de minimis cost to valid penological interests?" *Massachusetts Prisoners PAC* case, 435 Mass. at 820, quoting from *Cacicio* v. *Secretary of Pub. Safety,* 422 Mass. 764, 770 (1996).

[10]On this point, see G. L. c. 127, § 88 (as amended by St. 1955, c. 770, § 51), which provides: "An inmate of any prison or other place of confinement shall not be denied the free exercise of his religious belief and the liberty of worshipping God according to the dictates of his conscience in the place where he is confined . . . . This section shall not be so construed as to impair the discipline of any such institution so far as may be needful for the good government and the safe custody of its inmates . . . ." This law is in accord with the *O'Lone* analysis. *O'Lone* held that the reasonable relationship standard afforded adequate protection and set the appropriate constitutional balance to weigh impact on free exercise rights in that "[i]nmates clearly retain protections afforded by the First Amendment, . . . including its directive that no law shall prohibit the free exercise of religion," *O'Lone* v. *Estate of Shabazz,* 482 U.S. at 348, while the standard simultaneously "ensures the ability of corrections officials to anticipate security problems and to adopt innovative solutions to the intractable problems of prison administration, . . .

Despite the potentially conflicting positions presented in this appeal concerning the standard of review, we decline to enter the thicket of free exercise law, which, at present, has a multitude of engrafted branches and much entanglement. This case may be resolved without the necessity of reaching for a particular branch. The Federal free exercise claim is not before us (see note 2, *supra*), and the Massachusetts free exercise claim may be resolved without reaching the ultimate constitutional question of which standard of review will generally govern art. 46 issues arising in a prison forum. This is so because, even when measured by the more deferential standard set forth in the *Massachusetts Prisoners PAC* case, the correctional defendants have not, on this record, met the lesser burden of proof of establishing a reasonable relationship to valid penological interests for the kufi restriction in the DDU. A fortiori, the defendants could not meet the compelling State interest standard.

As to the failure of proof, the correctional defendants suggest that a kufi poses the potential for concealing contraband or dangerous instrumentalities. However, the only evidence proffered by the defendants to support that proposition was an affidavit of the defendant John Marshall, superintendent of MCI-Cedar Junction, which simply stated, ipse dixit, that a kufi may be used to conceal contraband.[11] This weak assertion is strongly rebutted by countervailing evidence in the record including the

and avoids unnecessary intrusion of the judiciary into problems particularly ill suited to resolution by decree." *Id.* at 349-350 (internal quotation marks omitted). Cf. *Jackson* v. *Hogan*, 388 Mass. 376, 381-383 (1983) (although art. 46 was not directly at issue, reasonableness standard applied to an inmate's First Amendment free exercise challenge to a prison policy prohibiting the inmate from attending a group religious service).

[11]Certain of the shifting currents in Federal law in the wake of *Smith* (see note 8, *supra*) have a direct impact upon laws and regulations affecting State correctional facilities, when an inmate's challenge is based on the First Amendment, 42 U.S.C. § 1983, or a related congressional act affecting Federal free exercise rights. Because such Federal claims were not preserved in this appeal (see note 2, *supra*), we need not address the direct impact issue or enter the swirling currents of Federal law on religious rights. Notwithstanding that the Federal claims are not before us, we acknowledge Federal cases applying the reasonable relationship standard and holding that a prison regulation restricting the right to wear a kufi does not infringe on First Amendment free exercise protections. See, e.g., *Burgin* v. *Henderson*, 536 F.2d 501, 503-504 (2d Cir. 1976); *St. Claire* v. *Cuyler*, 634 F.2d 109, 114-116 (3d Cir. 1980); *Butler-Bey*

following. First, a kufi is available to, and may be possessed by, any member of the general prison population, and there is no evidence of different security concerns in that context. Second, the record contains an unrebutted representation that a kufi may be worn in the disciplinary segregation unit, a higher security cell area than the DDU. Third, the inmate Matthews wore his kufi for six years while held in the DDU. See note 6, *supra*. Fourth, during the winter months, DDU prisoners are given a thick stocking-like winter knit hat, an item more conducive to hiding contraband than a kufi, which is a skull cap. Finally, the defendants' assertion of a security risk is hollow in light of their professed changed policy that now allows DDU inmates to purchase and possess kufi prayer caps.

Because the defendants have not met their burden of establishing a constitutionally adequate justification for prohibition of the kufi from the DDU and the resultant burden on free exercise rights, we hold that the DDU restriction unconstitutionally abridged the plaintiff's religious rights protected under art. 46. Accordingly, summary judgment was improperly granted to the defendants on this claim. Because injunctive relief is the only matter remaining,[12] and because a preliminary injunction had already entered setting forth appropriate terms and conditions, we conclude that there is no need for further proceedings in the Superior Court, except for entry of a judgment which, as requested in the complaint, would apply to any DDU inmate of the Muslim faith whose religious practice and prayers require the wearing of a kufi.

---

v. *Frey*, 811 F.2d 449, 451 (8th Cir. 1987) (fezes); *Muhammad* v. *Lynaugh*, 966 F.2d 901, 902-903 (5th Cir. 1992). A distinguishing mark of the cases — not present in this case — is that the inmates had alternative places of worship where the kufi could be worn during prayer. See, e.g., *Sledge* v. *Cummings*, 995 F. Supp. 1276, 1281 (D. Kan. 1998) (there is "an alternative means of exercising [the plaintiff's] constitutional rights, in that he may wear his Kufi in his cell and while attending services"). There was no such evidence of alternative means proffered by the defendants in this case involving the DDU.

[12]The plaintiff's complaint did not set forth a demand for damages. Rather, the original complaint contained only a prayer stating that the plaintiff would, at some point, request leave to amend the complaint to add a damages claim. The plaintiff did not do so, and indeed so acknowledges in his appellate brief. Accordingly, any claim for damages against the defendants in their individual capacities is not presented in this appeal.

Accordingly, we vacate the portion of the summary judgment dismissing the art. 46, § 1, claim and remand for entry of a judgment on that claim in the form of a declaration to provide as follows: the defendant officials of the Massachusetts Correctional Institution at Cedar Junction may not, consistent with art. 46, § 1, of the Amendments to the Massachusetts Constitution, prohibit the defendant and any other inmate assigned to the departmental disciplinary unit (DDU) from possessing and wearing a kufi, in the practice of his religion, while housed in the DDU. Nothing in this declaration shall be deemed to prevent Department of Correction personnel from searching any kufi in accordance with applicable procedures, or from undertaking other appropriate security measures.[13]

*So ordered.*

---

[13]In light of this result, and the fact that the judge did not find the defendants were entitled to qualified immunity, we need not reach the plaintiff's claim that he was wrongfully denied discovery with respect to the determination whether such immunity would be conferred.