Al Aswad T.A. MUHAMMAD, a/k/a Alvin Jones, and Jihaad A.M.E. Saahir, Plaintiffs–Appellants,

v.

James A. LYNAUGH, Director, Texas Department of Criminal Justice, Institutional Division, et al., Defendants–Appellees.

No. 91–4425
Summary Calendar.

United States Court of Appeals,
Fifth Circuit.

June 15, 1992.
Rehearing Denied July 15, 1992.

Jihaad A.M.E. Saahir, pro se.

Aswad T.A. Muhammad, pro se.

Louis V. Carrillo, Asst. Atty. Gen., Dan Morales, Atty. Gen., Austin, Tex., for defendants-appellees.

Before POLITZ, Chief Judge,
HIGGINBOTHAM and BARKSDALE,
Circuit Judges.

POLITZ, Chief Judge:

Al Aswad T.A. Muhammad and Jihaad
A.M.E. Saahir appeal the dismissal of their
42 U.S.C. § 1983 civil rights suit. Finding
no error we affirm.

### Background

Muhammad and Saahir, inmates of the
Texas Department of Criminal Justice, pro-
ceeding *pro se* and *in forma pauperis*
invoked 42 U.S.C. § 1983, alleging that
they were being denied their constitutional
right to exercise religious freedom.

Muhammad and Saahir maintain that
they are practicing Muslims and are mem-
bers of the Nubian Hebrew Mission–Ansaa-
ru Allah Community. They challenge as
unconstitutional TDCJ regulations which
prohibit their donning Kufi caps [1] outside
of the prison chapel and their cells, and
which forbid the wearing of religious
patches or insignias. They also claim that
the prison's Muslim chaplain discriminates
against them because they adhere to the
pedagogy of a different Muslim Illuminate,
Iman Isha of New York City, New York.
Finally, Muhammad argues that he uncon-
stitutionally has been denied the right to
purchase, use, and retain various religious
items, specifically a tape player and Arabic
language tapes.

After a lengthy evidentiary hearing the
magistrate judge found no constitutional
violations and dismissed the complaint as
frivolous. 28 U.S.C. § 1915(d). The plain-
tiffs timely appealed.

### Analysis

Imprisonment necessarily entails
a loss of manifold rights and liberties. A
prisoner is not free to do that which he
might wish to do, nor may he do allowable
things at a time and in a manner he might
prefer. Several constitutional rights are
protected, however, including the right to
practice one's religious beliefs. Restric-
tions thereon must be reasonably related to
legitimate penological interests.[2] Several
factors are relevant in determining wheth-
er a prison regulation infringes on an in-
mate's constitutional rights: (1) is there a
valid, rational correlation between the pris-
on regulation and the legitimate govern-
mental interest advanced; (2) are there al-
ternative means of exercising the rights
that remain available to the inmates; and
(3) what is the impact of an accommodation
in favor of the inmate on prison staff, other
inmates, and the allocation of prison re-
sources generally.[3] We review the magis-
trate's findings under the clearly erroneous
standard.[4]

### I. *Kufi Caps and Religious Insignia*

At the hearing before the magis-
trate judge two senior corrections officers
testified that security was the primary ra-
tionale powering the regulations which re-
strict the wearing of Kufi caps and other
religious insignia in the prison dayrooms
and other areas. They testified that weap-
ons, such as shanks and razor blades, could
easily be secreted inside a Kufi cap. They
also testified that the inmates use symbolic
banners to "show ... their colors," a prov-
en cause of problems in the dayrooms and
work stations.

We are persuaded that the evidence in-
troduced at the hearing established that
the regulations restricting the use of Kufi
caps and religious insignia bear a reason-
able relationship to the legitimate penologi-
cal interest of prison security.[5] Other cir-

---

1. The Kufi cap is a small, round, head covering
with religious significance for Muslims.

2. *O'Lone v. Estate of Shabazz,* 482 U.S. 342, 107
S.Ct. 2400, 96 L.Ed.2d 282 (1987); *Turner v.
Safley,* 482 U.S. 78, 107 S.Ct. 2254, 96 L.Ed.2d 64
(1987).

3. *Turner,* 482 U.S. at 89–90, 107 S.Ct. at 2261–62.

4. Fed.R.Civ.P. 52(a); *Anderson v. Bessemer City,*
470 U.S. 564, 105 S.Ct. 1504, 84 L.Ed.2d 518
(1985).

5. The Supreme Court in *Pell v. Procunier,* 417
U.S. 817, 94 S.Ct. 2800, 41 L.Ed.2d 495 (1974),
identified several important functions of the
corrections system, the first being the "institu-
tional consideration of internal security within

cuits addressing this issue have reached the same conclusion.[6]

By permitting inmates to wear Kufi caps and religious insignia in their cells and in religious services in the chapel, the TDJC has provided an opportunity for the exercise of religious freedoms as guaranteed by the Constitution. Allowing inmates to wear these religious articles in other areas conceivably could undermine the TDJC's legitimate penological interests, primarily its overriding concern for prison security.

## II. *The Chaplain*

Plaintiffs contend that the prison chaplain denied their right to practice their religion and discriminated against them because they follow a different Muslim Illuminate. Specifically, plaintiffs maintain that the prison chaplain denied them the right to make copies of religious tapes even though the inmates of his particular Islamic persuasion were permitted to do such.

During the hearing several inmates testified that Muslim religious activities are open to all inmates. The chaplain testified that he ministers to every Muslim inmate, regardless of the Illuminate followed, and that he has never excluded any inmates of any branch of Islam. With regard to the tapes, the chaplain testified that he refused to give Saahir one tape because it was the only copy he had available.

The evidence reflects no constitutional violation by the chaplain. To the contrary, the prison chaplain afforded plaintiffs the same opportunities to worship made available to all Muslim inmates, and his reason for denying the use of the particular tape was patently legitimate. Plaintiffs have been given the same reasonable opportunity to practice their faith as that provided other religious groups.[7]

## III. *The Tape Player*

Muhammad raises an equal protection claim contending that he was denied a tape player while other inmates were not. He claims that a tape player is necessary to learn Arabic, the original language of the Muslim Holy Book.

During the hearing Saahir and another inmate, Roy Sneed, testified that they own and were allowed to operate tape players. It was established during the hearing, however, that Muhammad is quartered in the Michael Unit of TDJC where tape recorders are not allowed; Saahir and Sneed are housed in Beto I Unit where they are permitted. This rule on the use of tape recorders is not related to any particular religious beliefs or practices.

To succeed in his equal protection claim Muhammad must prove purposeful discrimination resulting in a discriminatory effect among persons similarly situated.[8] He has failed to make this showing. All of the inmates similarly situated, *i.e.,* those housed in the Michael Unit, are not permitted to possess tape players. Muhammad is no exception. He has not demonstrated a constitutional violation of his individual rights or a violation of the rights of all of the residents in the Michael Unit. His claim has no merit.

AFFIRMED.

### ON PETITION FOR REHEARING

July 15, 1992

PER CURIAM:

IT IS ORDERED that the petition for rehearing filed in the above entitled and numbered cause be and the same is hereby denied.

---

the corrections facilities...." *Id.* at 823, 94 S.Ct. at 2804.

6. *Butler–Bey v. Frey,* 811 F.2d 449 (8th Cir.1987); *St. Claire v. Cuyler,* 634 F.2d 109 (3d Cir.1980); *Burgin v. Henderson,* 536 F.2d 501 (2d Cir.1976).

7. Muhammad's claim that the prison chaplain denied him the opportunity to purchase a Kufi cap and prayer rug were addressed in *Muham-*

*mad v. Moxon,* 952 F.2d 400 (5th Cir.1992) (unpublished), and the magistrate judge properly dismissed Muhammad's claims in the present action concerning this same issue. *See Mayfield v. Collins,* 918 F.2d 560 (5th Cir.1990).

8. *McCleskey v. Kemp,* 481 U.S. 279, 107 S.Ct. 1756, 95 L.Ed.2d 262 (1987).