**IN THE UNITED STATES COURT OF APPEALS
FOR THE FIFTH CIRCUIT**

_____

No. 00-40156
_____


LOUIS RAY GREEN, also known as Habib A. K. Khidar,

                                        Plaintiff-Appellant

            versus

ALLAN POLUNSKY, Chairman, Board of Criminal Justice; TEXAS BOARD OF
CRIMINAL JUSTICE; JERRY GROOM,

                                        Defendants-Appellees


_____

Appeal from the United States District Court
for the Eastern District of Texas

_____
October 18, 2000


Before KING, Chief Judge, CUDAHY,* and WIENER Circuit Judges.

WIENER, Circuit Judge:

In this civil rights complaint against the Texas Department of
Criminal Justice and other named individuals (collectively "TDCJ"),
Plaintiff-Appellant Louis Ray Green, also known as Habib A. K.
Khidar ("Khidar"),[1] appeals the ruling of the district court

---

*Circuit Judge of the Seventh Circuit, sitting by designation.

[1] Khidar sought to consolidate his claim with those of four
other similarly-situated inmates.  This motion was denied by the
district court which ruled that each inmate must proceed
separately.

dismissing his claim under § 1915(e) both as frivolous and as failing to state a claim on which relief could be granted.[2]  In his initial complaint, Khidar contested TDCJ's prison grooming policy which requires prisoners to keep their hair cut short and their faces shaved clean.  An exception is made for prisoners with medical conditions that are aggravated by shaving; they are allowed to wear beards not to exceed 3/4 inch in length.  Khidar contends that the grooming policy coupled with the medical exception infringes on his religious freedom by preventing him from wearing an even shorter (1/4 inch) beard for religious reasons than inmates with medical reasons are allowed to wear.  We grant the prison system broad discretion to create and implement internal policies of penological importance; and as we conclude that the TDCJ has legitimate reasons for its policy, we affirm the ruling of the district court.

I.

*Facts and Proceedings*

Khidar is a Muslim, and the wearing of a beard is a tenet of his faith.  Proceeding <u>pro</u> <u>se</u> and <u>in</u> <u>forma</u> <u>pauperis</u>, Khidar filed a claim pursuant to 42 U.S.C. § 1983, alleging that his civil rights were violated by the TDCJ grooming policy.  Specifically, he claimed that the prison grooming policy requiring inmates to be clean-shaven violates his First Amendment right to free exercise of

---

[2] We address only the issue of the district court's dismissal for failure to state a claim on which relief could be granted and do not address whether Khidar's claim was frivolous.

religion.  Khidar also sought to consolidate his claim with like claims of four other inmates.

The district court refused to consolidate the claims of the five inmates, ruling that each should be heard individually.  It then referred Khidar's Free Exercise claim to a magistrate judge and, pursuant to the recommendation of that judge, dismissed the claim pursuant to 28 U.S.C. § 1915(e).  Khidar timely appealed.

II.

*Analysis*

A.   Standard of Review

We review a district court's decision regarding the consolidation of cases for abuse of discretion.[3]  We review de novo the court's dismissal for failure to state a claim, pursuant to 28 U.S.C. § 1915.[4]

B.   Consolidation of Claims

Khidar appeals the district court's denial of his motion to consolidate his case with those of his fellow inmates.  As our review[5] of the district court's decision regarding consolidation satisfies us that the court acted within its discretion in denying

---

[3] See Lightbourn v. County of El Paso, Texas, 118 F.3d 421 (5th Cir. 1997).

[4] See Ruiz v. United States, 160 F.3d 273, 273 (5th Cir. 1998).

[5] "[W]e review a trial court's decision to consolidate . . . not merely for abuse of discretion but to determine as a matter of law whether the joinder was proper." United States v. Park, 531 F.2d 754, 760 (1976).

Khidar's motion, we affirm the court's ruling.

C.   The Grooming Policy

Khidar challenges the TDCJ's grooming policy on the ground that it violates his free expression of religion as guaranteed under the Free Exercise Clause of the First Amendment.[6] Specifically, he argues that the policy is discriminatory by allowing prisoners to maintain 3/4 inch beards if necessitated by their medical conditions but not allowing even shorter beards to be worn for religious reasons.  Wearing beards is an accepted means of expressing religious devotion for Muslims such as Khidar.  We have addressed the issue of prisoners wearing beards on a number of occasions.  Most notably, in Powell v. Estelle,[7] we rejected a challenge to a prison policy forbidding long hair and beards, finding the policy to fall within the discretion granted to prison officials for legitimate penological reasons.  We have not yet addressed the specific issue of short beards, raised here by Khidar,[8] but other Circuits have done so.  Every Circuit that has considered the issue of short beards under similar circumstances

---

[6] Under an extremely liberal reading of this pro se appeal, we might construe Khidar as also advancing an equal protection claim. That issue was not briefed, however, and thus we deem it to be abandoned. See Yohey v. Collins, 985 F.2d 222, 224 (5th Cir. 1993).

[7] 959 F.2d 22 (5th Cir. 1992).

[8] Khidar requests that he and his fellow inmates be allowed to wear a beard of 1/4 inch.

has upheld the prison grooming policies[9] —— and we now join them, convinced by the logic of their opinions.

In addressing claims of prisoners who allege that their civil rights have been violated, we must remember that "'[l]awful incarceration brings about the necessary withdrawal or limitation of many privileges and rights, a retraction made necessary by the considerations underlying our penal system.'"[10] When reviewing the policies of prison officials, we do so with deference, keeping firmly in mind the difficult task before them in fulfilling "valid penological interests —— including deterrence of crime, rehabilitation of prisoners, and institutional security."[11]

"[W]hen a prison regulation impinges on inmates' constitutional rights, the regulation is valid if it is reasonably related to legitimate penological interests."[12] "[S]everal factors are relevant in determining the reasonableness of the regulation at issue,"[13] including:

(1) whether there is "a 'valid, rational connection' between the

---

[9] See, e.g., Hines v. South Carolina Dep't of Corrections, 148 F.3d 353,358 (4th Cir. 1998); Harris v. Chapman, 97 F.3d 499, 504 (11th Cir. 1996); Friedman v. Arizona, 912 F.2d 328, 332 (9th Cir. 1990).

[10] O'Lone v. Estate of Shabazz, 482 U.S. 342, 348, 107 S.Ct. 2400, 2404 (1987).

[11] Id. at 349.

[12] Turner v. Safley, 482 U.S. 78, 89, 107 S.Ct. 2254, 2261 (1987).

[13] Id.

prison regulation and the legitimate governmental interest put forward to justify it,"[14]

(2) "whether there are alternative means of exercising the right that remain open to prison inmates,"[15]

(3) "the impact accommodation of the asserted constitutional right will have on guards and other inmates, and on the allocation of prison resources generally,"[16] and

(4) the availability of other alternatives to the prison regulation in question that would accommodate the prisoners' rights at de minimis cost to valid penological interests.[17]

The TDCJ grooming policy is obviously "reasonably related to legitimate penological interests"[18] and clearly satisfies the foregoing factors. Prisons typically require inmates to be clean-shaven and to keep their hair cut short for a number of valid

---

[14] Id.

[15] Id. at 90. In addressing this factor, we look to whether inmates are allowed other means to express their religious beliefs (on a general level) not whether they were allowed a means to express their specific religious belief in the necessity of wearing a beard. See O'Lone, 482 U.S. at 352. Khidar has neither alleged nor likely could he successfully show, given our experience with the Texas prison regulations, that he has been denied "all means of express[ing]" his religious beliefs. Id.

[16] Turner, 482 U.S. at 90.

[17] See id. "[T]he absence of ready alternatives is evidence of the reasonableness of a prison regulation. . . . By the same token, the existence of obvious, easy alternatives may be evidence that the regulation is not reasonable, but is an 'exaggerated response' to prison concerns." Id.

[18] Id. at 89.

6

reasons. This practice is necessary for identification purposes: Without it inmates would be able to change their appearances with ease simply by shaving off their beards or cutting their hair. This is especially relevant given the need for guards and other officials who are not sufficiently familiar with all prisoners to identify them quickly and easily, as when investigating escapes or intra-prison crimes. Additionally, contraband such as drugs and weapons can be hidden in long hair and beards, and guards conducting searches for such items would be exposed to unnecessary risks of harm. Conducting such operations under dangerous conditions would greatly increase the time and expense of running the prison system as well.

As we have held that these are legitimate penological interests,[19] and that a policy preventing inmates from growing long hair and beards is reasonably related to such interests,[20] the only remaining question is whether the same logic can be applied to the instant variation on that theme. We must determine specifically whether Khidar's complaint — that inmates should be able to maintain 1/4 inch beards for constitutionally guaranteed exercise of religion when 3/4 inch beards are allowed to be worn by those inmates for whom shaving aggravates a medical condition — is cognizable. At first blush, Khidar's claim has an intuitive appeal, as some of the accepted rationales for proscribing the

_____

[19] See Powell, 959 F.2d at 25.

[20] See id.

7

wearing of beards would not apply to the wearing of beards of only 1/4 inch length.  For instance, contraband or weapons could hardly be hidden in a beard of such a short length.  Also, the level of the identification problem would be significantly reduced.  Still, a number of our fellow Circuits have addressed and rejected nearly identical claims, and we are convinced, as are they, that this grooming policy meets the requirements set forth by the Supreme Court in Turner[21] and O'Lone.[22]  First, the policy is neutral, affecting all inmates, regardless of their religious beliefs.  The neutral and universal application of a policy requiring short hair and clean-shaven faces serves the state's penological interests in a number of ways.  Beards of any length can change one's appearance, and thus would be detrimental to the prison's interest in identifying prisoners internally as well as in the event of escape.  Beards and hairstyle are also used by inmates to signal gang affiliations.  Thus, the TDCJ has a legitimate interest generally in preventing inmates from wearing even short beards.[23]

Khidar contends that these interests have already been negated in this instance by the prison's allowing inmates for whom shaving aggravates a medical condition to wear 3/4 inch beards, so another less intrusive exception should be made for those whose religious beliefs involve the wearing of a beard.  However reasonable this

---

[21] 482 U.S. at 89-91.

[22] 482 U.S. at 348-352.

[23] See Hines, 148 F.3d at 358.

8

position may initially appear, a deeper analysis demonstrates the impracticability of a religious exception. The number of inmates warranting a medical exemption to the grooming policy is quite small, but the number of inmates likely to seek qualification for a religious exception would be much greater. In addition, such a policy would place prison administrators in the untenable position of trying to determine which asserted religious beliefs, and even which professed religions, are legitimate.

Although the TDCJ grooming policy may not be the least restrictive policy available to achieve the prison's interests, that is not what is required here.[24] So long as the penological interests at stake could not be achieved without depriving prisoners of their rights, the policy's infringement on those rights must be abided. That is clearly the case here. Any alternatives would impose significant costs on the prison system and would likely increase the dangers that prison guards and inmates already face. Neither does the TDCJ grooming policy deprive Muslim inmates of "all means of expression"[25] of their religious beliefs. It merely removes or reduces one of many avenues by which they may manifest their faith.

III.

*Conclusion*

Satisfied that the TDCJ's grooming policy is a regulation

---

[24] See Turner, 482 U.S. at 90.

[25] Id. at 92.

"reasonably related to legitimate penological interests"[26] —— and that the medical exception for 3/4 inch beards does require modification of the policy —— and further satisfied that the policy does not unduly infringe on Khidar's rights under the Free Exercise Clause, we decline Khidar's invitation to invalidate the policy or to order the TDCJ to modify its policy by permitting 1/4 inch beards for religious observance. We therefore affirm the decision of the district court dismissing Khidar's claim.

AFFIRMED.

S:\OPINIONS\PUB\00\00-40156.CV0

---

[26] _Id._ at 89.