Hady Hassan OMAR,

v.

Carl CASTERLINE, et al.

No. CIV.A.02–1933.

United States District Court,
W.D. Louisiana.
Alexandria Division.

Sept. 11, 2003.

J. Michael Small, Alexandria, LA, G. Brian Busey, Peter C. Sales, John L. Kolakowski, Morrison & Foerster, McLean, VA, Christopher Cobb, Morrison & Foerster, Washington, DC, Robert Rubin, Philip Kim Hwang, Lawyers Cte. for Civil Rights, San Francisco, CA, Paula K. Cobb, Baton Rouge, LA, for plaintiff.

Mary Hampton Mason, U.S. Dept of Justice Torts, Washington, DC, Freeman R. Matthews, Usry, Weeks & Matthews, New Orleans, LA, for defendants.

## MEMORANDUM RULING

LITTLE, District Judge.

Before this court is a motion to dismiss or, in the alternative, for summary judgment [Doc. No. 37] filed by defendants Carl Casterline, Les Phillips, Roger Cosgro and Vence Carmach (collectively "defendants"). Plaintiff Hady Hassan Omar opposes this motion and moves for a continuance to allow discovery pursuant to Federal Rule of Civil Procedure ("FRCP") 56(f) [Doc. No. 49]. For the following reasons, defendants' motion is GRANTED in part and DENIED in part. Plaintiff's motion is DENIED as MOOT.

### I. FACTUAL AND PROCEDURAL BACKGROUND

On 9 September 2002, Omar filed suit for damages from alleged constitutional violations against Carl Casterline, the warden of the United States Penitentiary at Pollock, Louisiana ("Pollock"), Les Phillips, a captain at Pollock, Roger Cosgro, a case management coordinator at Pollock, and Vence Carmach, a special agent with the Immigration and Naturalization Service ("INS"). Specifically, plaintiff complains that defendants violated his constitutional rights by performing body cavity searches, interfering with his right to free exercise of religion and denying him access to counsel. On 13 January 2003, the defendants filed the motion that is presently before the court. On 14 February 2003, plaintiff filed a motion to continue defendants' motion for summary judgment to allow discovery. We turn to the facts of this case as detailed below.

The events of this case take place during the aftermath of the September 11th terrorist attacks. On 12 September 2001, agents with the Federal Bureau of Investigation ("FBI") took Omar into custody. Omar, an Egyptian national, was residing

in Arkansas with an expired visa. The FBI believed Omar was linked with the September 11th terrorist attacks since Omar purchased an airplane ticket for the morning of September 11th from the same internet account and in the same state as two of the known hijackers. Plaintiff alleges that FBI and INS agents interviewed him for over seven hours regarding his religious beliefs, his financial situation and reaction to the terrorist attacks. Plaintiff was detained overnight and transported to Sebastian County Detention Center in Arkansas. The following day, FBI agents questioned Omar about the terrorist attacks and performed a polygraph test. Plaintiff was later transported to the New Orleans Parish Prison. On 16 September, plaintiff was transported to Pollock.

Immediately after Omar arrived in Pollock, Phillips conducted a visual body cavity search of Omar in front of multiple male and female observers and a video camera. Phillips also ordered another individual to perform a digital cavity probe. Omar was placed in a cell equipped with video camera to record his movements. Omar maintains that Casterline and Cosgro regularly denied his attempt to contact an attorney, his family and the Egyptian consulate. Omar alleges he was subject to multiple visual body cavity searches while he was detained. Omar also complains that he was served pork in violation of his Islamic faith and that defendants would not tell him the time of day so he could adhere to his prayer schedule. Finally, plaintiff contends that he was not informed of the beginning of Ramadan until after he broke the fast required by his religion.

On 20 November 2001, Omar was transferred to the Federal Detention Center at Oakdale. He was released three days later. Omar was held for a total of seventy-three days.

## II. LAW AND ANALYSIS

### A. *Standards of Review*

The motion presently before the court is a motion to dismiss or, in the alternative, for summary judgment. Accordingly, we discuss the standards of review for both types of motions.

#### 1. *Standard of Review for Motion to Dismiss*

Generally, a complaint must contain a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed.R.Civ.P.8(a)(2). Dismissal is warranted if "it appears certain that the plaintiff cannot prove any set of facts in support of his claim that would entitle him to relief." *Piotrowski v. City of Houston,* 51 F.3d 512, 514 (5th Cir.1995) (quoting *Leffall v. Dallas Indep. Sch. Dist.,* 28 F.3d 521, 524 (5th Cir.1994)).

In a motion to dismiss for failure to state a claim pursuant to Rule 12(b)(6), the court must accept all well-pleaded facts as true and view the facts in the light most favorable to the plaintiff. *See Baker v. Putnal,* 75 F.3d 190, 196 (5th Cir.1996); *American Waste & Pollution Control Co. v. Browning–Ferris, Inc.,* 949 F.2d 1384, 1386 (5th Cir.1991). "A motion to dismiss an action for failure to state a claim 'admits the facts alleged in the complaint, but challenges plaintiff's right to relief based upon those facts.'" *Crowe v. Henry,* 43 F.3d 198, 203 (5th Cir.1995) (quoting *Ward v. Hudnell,* 366 F.2d 247, 249 (5th Cir. 1966)). In deciding whether dismissal is warranted, the court will not accept conclusory allegations in the complaint as true. *See Kaiser Aluminum & Chem. Sales, Inc. v. Avondale Shipyards, Inc.,* 677 F.2d 1045, 1050 (5th Cir.1982); *Associated Builders, Inc., v. Alabama Power Co.,* 505 F.2d 97, 100 (5th Cir.1974). Similarly, "conclusory allegations or legal conclusions masquerading as factual conclusions will

not suffice to prevent a motion to dismiss." *Fernandez–Montes v. Allied Pilots Ass'n,* 987 F.2d 278, 284 (5th Cir.1993).

### 2. Standard of Review for Summary Judgment

Summary judgment is appropriate only if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, when viewed in the light most favorable to the non-movant, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law. Fed. R. Civ.P.56; *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 249–50, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). A dispute about a material fact is "genuine" if the evidence is such that a reasonable jury could return a verdict for the nonmoving party. *Id.* at 248, 106 S.Ct. 2505. In making this determination, a court must draw all justifiable inferences in favor of the nonmoving party. *Id.* at 255, 106 S.Ct. 2505. Once the moving party has initially shown "that there is an absence of evidence to support the non-moving party's case," *Celotex Corp. v. Catrett,* 477 U.S. 317, 325, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986), the non-movant must come forward, after adequate time for discovery, with "specific facts" showing a genuine factual issue for trial. Fed.R.Civ.P. 56; *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 587, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986). Conclusory denials, improbable inferences, and legalistic argumentation are not an adequate substitute for specific facts showing that there is a genuine issue for trial. *S.E.C. v. Recile,* 10 F.3d 1093, 1097 (5th Cir.1993).

### B. Qualified Immunity

■ The question of qualified immunity must be addressed as a threshold matter because this issue determines a defendant's immunity from suit. In other words, a defendant's immunity determin-ing his ability to avoid trial altogether, rather than his immunity from damages. *Brewer v. Wilkinson,* 3 F.3d 816, 820 (5th Cir.1993), *cert. denied* 510 U.S. 1123, 114 S.Ct. 1081, 127 L.Ed.2d 397 (1994). The defense provides immunity from trial as well as the ability to avoid pretrial matters, including discovery. *See McClendon v. City of Columbia,* 305 F.3d 314, 323 (5th Cir.2002).

"When a defendant invokes qualified immunity, the burden is on the plaintiff to demonstrate the inapplicability of the defense." *See McClendon,* 305 F.3d at 323 (citing *Bazan ex. rel. Bazan v. Hidalgo County,* 246 F.3d 481, 489 (5th Cir.2001)). In considering the defendants' qualified immunity claim, we must remain cognizant of the fact that the "qualified ... immunity doctrine was established to reconcile two competing interests. One interest is the compensation of persons whose federally protected rights have been violated. Opposing this is the fear that personal liability will inhibit public officials in the discharge of their duties." *Johnston v. City of Houston,* 14 F.3d 1056, 1059 (5th Cir. 1994). For that reason, "government officials performing discretionary functions generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald,* 457 U.S. 800, 818, 102 S.Ct. 2727, 73 L.Ed.2d 396 (1982).

The Fifth Circuit analyzes a claim of qualified immunity pursuant to a two step process. The first consideration requires this court to examine whether the "plaintiff has alleged a violation of a clearly established right." *Fontenot v. Cormier,* 56 F.3d 669, 673 (5th Cir.1995). If it is found that the official's conduct was unconstitutional, then we must ask whether the conduct was objectively reasonable in light

of "clearly established" law at the time of the alleged violation. *See Kelly v. Foti*, 77 F.3d 819, 821 (5th Cir.1996). The touchstone of this inquiry is whether a reasonable person would have believed that his conduct conformed to the constitutional standard in light of the information available to him and the clearly established law. *See Gutierrez v. City of San Antonio*, 139 F.3d 441, 447 (5th Cir.1998). In terms of law being "clearly established", "[t]he contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right." *Anderson v. Creighton*, 483 U.S. 635, 640, 107 S.Ct. 3034, 3039, 97 L.Ed.2d 523 (1987).

The relevant factors to this analysis of qualified immunity differ depending on whether the issue is considered under a motion to dismiss or a motion for summary judgment. "At that earlier stage [motion to dismiss], it is the defendant's conduct *as alleged in the complaint* that is scrutinized for 'objective legal reasonableness.' On summary judgment, however, the plaintiff can no longer rest on the pleadings...and the court looks to the evidence before it (in the light most favorable to the plaintiff)." *Behrens v. Pelletier*, 516 U.S. 299, 309, 116 S.Ct. 834, 840, 133 L.Ed.2d 773 (1996).

■ Once an official asserts his entitlement to qualified immunity in a properly supported motion for summary judgment, the plaintiff bears the burden of coming forward with sufficient summary judgment evidence to sustain a determination that the official's actions violated clearly established federal law. *See Blackwell v. Barton*, 34 F.3d 298, 301 (5th Cir.1994). Hence, plaintiff must show that defendants knew or should have known that the actions they took within their sphere of official responsibilities would violate plaintiff's constitutional rights. *See Harlow*, 457 U.S. at 818, 102 S.Ct. at 2727.

### 1. Constitutional Claims Against Defendant Carmach

■ As a preliminary matter, we address plaintiff's constitutional claims against Carmach. The Fifth Circuit has made clear that "there is no doctrine of respondeat superior in *Bivens* actions." *Cronn v. Buffington*, 150 F.3d 538, 544 (5th Cir.1998) (citations omitted) (affirming dismissal where plaintiff failed to state facts indicating the degree of defendant's personal involvement). Plaintiff alleges that Carmack was directly responsible for his detention at Pollock and that he "knew or acted with deliberate indifference or callous disregard to the fact that [p]laintiff would be subjected to unconstitutional searches at these facilities." Compl. Doc. No. 1. Plaintiff, however, fails to allege Carmach's personal involvement in any of the constitutional violations. Accordingly, all claims against Carmach are DISMISSED under Rule 12(b)(6) for failure to state a claim.

### 2. Body Cavity Searches and Rectal Probes

On 16 September 2001, plaintiff alleges that Phillips conducted a search of his person upon his arrival to Pollock ("Pollock Search"). In his complaint plaintiff states that Phillips ordered him to remove his clothing and conducted a rectal probe in front of a cameraman and at least seven others, including two female officers. Plaintiff states that the observing officers laughed at him while he was searched. Plaintiff argues that the Pollock Search was unnecessary since he was subject to a strip search days before while at another facility. Plaintiff also complains of repeated searches during his detention after visits with his wife and dentist. In his complaint, plaintiff cites Phillips as the only named defendant directly involved in these searches.

■ Plaintiff alleges the searches violated his fourth, Fifth and Fourteenth Amendment rights. The first step is to determine whether Phillips violated a clearly established right. Omar entered Pollock as an INS detainee. As such, his status at that time was equivalent to that of a pretrial detainee. *See Edwards v. Johnson*, 209 F.3d 772, 778 (5th Cir.2000). We consider Omar's constitutional claims in regard to the Pollock Search under the Fourth Amendment. *See Graham v. Connor*, 490 U.S. 386, 395, 109 S.Ct. 1865, 1871, 104 L.Ed.2d 443 (1989)(analyzing plaintiff's claim of excessive force under the Fourth Amendment rather than substantive due process "[b]ecause the Fourth Amendment provides an explicit textual source of constitutional protection against this sort of physically intrusive governmental conduct"). The test of reasonableness under the Fourth Amendment "requires a balancing of the need for the particular search against the invasion of personal rights that the search entails. Courts must consider the scope of the particular intrusion, the manner in which it is conducted, the justification for initiating it, and the place in which it is conducted." *Bell v. Wolfish*, 441 U.S. 520, 559, 99 S.Ct. 1861, 1884, 60 L.Ed.2d 447 (1979) (citations omitted). The Fifth Circuit has "interpreted this statement of reasonableness as striking a balance 'in favor of deference to prison authorities' views of institutional safety requirements against the admittedly legitimate claims of inmates not to be searched in a humiliating and degrading manner.'" *Elliott v. Lynn*, 38 F.3d 188, 191 (5th Cir.1994) (quoting *Watt v. City of Richardson Police Dep't.*, 849 F.2d 195, 196 (5th Cir.1988)).

■ Decisions by prison administrators regarding security are imparted with great deference. *See Oliver v. Scott*, 276 F.3d 736, 745 (5th Cir.2002). Here the search occurred after plaintiff's entry into Pollock. While a body cavity search is certainly an invasive procedure, prison officials have a compelling interest to ensure that detainees are free of contraband and weapons. *See Hay v. Waldron*, 834 F.2d 481, 486–87 (5th Cir.1987)(affirming lower court's holding that a prison's strip search policy reasonably related to legitimate security needs.) Phillips had a legitimate safety concern to conduct a body and cavity search consistent with the prison's procedure upon plaintiff's entry into the facility. We therefore conclude that the safety and security concerns of the Pollock Search are reasonable and outweigh the intrusive procedure.

■ Plaintiff's claim that female officers observed the strip search and that officers ridiculed him fall short of any constitutional violation. "We would have to expand the Supreme Court's fundamental implied rights jurisprudence to create a right for prisoners not to have members of the opposite sex view them naked." *Oliver*, 276 F.3d at 744–45; *see also Letcher v. Turner*, 968 F.2d 508, 510 (5th Cir.1992)(holding that there was "no constitutional violation due to the presence of female guards during the strip search.") Furthermore, Omar's contention that unknown officers laughed at him while Phillips conducted the search falls short of any cognizable constitutional claim.

■ Plaintiff also alleges that the Pollock Search constitutes punishment in violation of the Fifth Amendment. In *Bell*, the Supreme Court stated that "the determination whether these restrictions and practices constitute punishment in the constitutional sense depends on whether they are rationally related to a legitimate nonpunitive governmental purpose and whether they appear excessive in relation to that purpose." 441 U.S. at 561, 99 S.Ct. at 1886. As noted above, the Pollock Search was a reasonable measure in response to security concerns. Accordingly, we con-

clude that the Pollock Search did not violate the Fifth Amendment.

We therefore find that defendant Phillips is entitled to qualified immunity. All of plaintiff's claims regarding the Pollock Search are dismissed pursuant to Rule 12(b)(6).

### 3. Religious Violations

Plaintiff alleges that defendants failed to make religious accommodations in violation of the First, Fifth and Fourteenth Amendments. Specifically, Omar contends that, despite his repeated requests to Casterline and Cosgro concerning his Islamic beliefs, he was served pork in his meals. Plaintiff argues that while in Pollock, Casterline and Cosgro acted with knowledge and deliberate indifference of his religious needs and beliefs. In addition, plaintiff alleges that Cosgro refused to inform him of the time of day to follow his prayer schedule and the proper date for the start of Ramadan.

■ We begin by noting that we will not consider this claim under the Fourteenth Amendment since the First Amendment adequately addresses this issue. See Canady v. Bossier Parish School Bd., 240 F.3d 437, 444 (5th Cir.2001)(stating that "[b]ecause the First Amendment provides an adequate source of constitutional protection in this case, there is no reason for this court to address a general substantive due process claim.") (citations omitted). The right to practice one's religion in prison is clearly protected by the First Amendment. See Al–Ra'id v. Ingle, 69 F.3d 28, 33 (5th Cir.1995).

■ In his complaint, plaintiff contends that he informed Casterline and Cosgro about his religious beliefs and that his Islamic faith did not allow him to consume pork. Omar alleges that the defendants ignored his requests and that he was repeatedly given pork and pork products. Plaintiff also contends that defendants would not tell him the time of day in order to follow his prayer schedule and that Cosgro would not tell him the proper date in order to observe the religious holiday Ramadan.

■ Based on these allegations alone, we find that the complaint establishes a violation of a clearly established right. As noted above, for a motion to dismiss analysis, we consider defendants' conduct as *"alleged in the complaint."* We must therefore look beyond the pleadings and turn to a summary judgment analysis.

Plaintiff alleges violations of a clearly established right-namely the right to practice freely one's religion. Restrictions on this right "must be reasonably related to legitimate penological interests." *Eason v. Thaler,* 73 F.3d 1322, 1327 (5th Cir.1996)(quoting *Muhammad v. Lynaugh,* 966 F.2d 901, 902 (5th Cir.1992)). We are unable to conceive of any "penological interest" to justify serving Omar pork or refusing to tell him the time of day for prayers and the date to observe a religious holiday. Notably, defendants do not suggest any security interests or safety concerns outweighing the alleged constitutional violation. Instead, defendants argue that plaintiff never followed prison procedures by telling the chaplain about his dietary restrictions. Defendants contend that Omar actually told the chaplain that he had no diet restrictions at all. Furthermore, defendants state that, as a factual matter, plaintiff was never served pork or any pork product during his stay in Pollock. Defendants also maintain that plaintiff had an exterior window to approximate the time of day and a clock visible from his cell.

Omar alleges in a sworn declaration that several times a week he was served bacon, sausage, hotdogs, ham and other pork products. On one occasion after eating meat, Omar states that a guard informed

him that he actually consumed pork. Plaintiff contends that he never told the chaplain he did not want a religious diet and that he did not know the chaplain was the person to whom dietary restrictions should be directed. Plaintiff states that when he asked Costro the official start date of Ramadan, Cosgro told him the incorrect date on purpose. Omar alleges that Cosgro refused to tell him the time and that there was no clock visible from his cell.

We conclude that there is a genuine issue as to the material facts regarding this issue. Specifically, the parties disagree over whether Omar informed the chaplain about his dietary restrictions, whether Omar was actually served pork, whether Omar could view a clock from his cell and whether Omar was informed about the proper start date of Ramadan. Accordingly, defendants are not entitled to qualified immunity with respect to the constitutional claim of interfering with plaintiff's practice of religion. Defendants' motion for summary judgment on this issue is DENIED.

### 4. Denial of Counsel

Plaintiff alleges that Casterline and Cosgro repeatedly ignored his request to communicate with an attorney. Plaintiff contends that he was unable to speak with his attorney until on or about 25 September 2001. Omar argues that the delay forced him to continue a bond hearing scheduled on 2 October 2001 until 18 October 2001.

The first step in our analysis is to identify the constitutional violation. "It is well settled that, because deportation hearings are considered civil in nature, there is no Sixth Amendment right to counsel." *Goonsuwan v. Ashcroft*, 252 F.3d 383, 385 n. 2 (5th Cir.2001)(citing *Mustata v. U.S. Dep't of Justice*, 179 F.3d 1017, 1022 n. 6 (6th Cir.1999); *Paul v. INS*, 521 F.2d 194, 198 (5th Cir.1975)). "However, an alien has a right to counsel if the absence of counsel would violate due process under the Fifth Amendment." *United States v. Campos–Asencio*, 822 F.2d 506, 509 (5th Cir.1987)(citing *Mantell v. U.S. Dep't of Justice, I.N.S.*, 798 F.2d 124, 127 (5th Cir. 1986); *Paul*, 521 F.2d at 197).

The question before the court is whether the denial of counsel amounted to a denial of due process. We hold that plaintiff has failed to establish a denial of due process. Omar admits to meeting with counsel and that he was represented by counsel during the immigration proceedings. Plaintiff argues that the defendants' interference with counsel led to a delay in the bond hearing by sixteen days. Plaintiff, however, is unable to establish how this delay on its own created a denial of due process. Omar received assistance from counsel fulfilling the due process requirement. We therefore conclude that plaintiff has failed to allege a violation of a clearly established right. Accordingly, defendants Casterline and Cosgro are entitled to qualified immunity with respect to the denial of counsel claim. Plaintiff's claim in reference to denial of an attorney is DISMISSED pursuant to Rule 12(b)(6).

### III. CONCLUSION

For the foregoing reasons, defendants' motion to dismiss or, in the alternative, for summary judgment is GRANTED in PART and DENIED in PART. Plaintiff's claims against Carmach are DISMISSED under Rule 12(b)(6) for failure to state a claim upon which relief can be granted. Plaintiff's constitutional claims with respect to the Pollock Search are DISMISSED and Phillips is entitled to protection under qualified immunity. Defendants Casterline and Cosgro are not entitled to qualified immunity with respect to plaintiff's claims of interference with the practice of his religion and

defendants' motion for summary judgment on this issue is DENIED. Plaintiff's claim of denial of counsel is DISMISSED and defendants Casterline and Cosgro are entitled to qualified immunity with respect to this issue. As a result of this court's ruling, we conclude that plaintiff's motion to continue defendants' motion for summary judgment until after the conclusion of discovery is DENIED as MOOT.