**IN THE UNITED STATES COURT OF APPEALS**
**FOR THE FIFTH CIRCUIT**

United States Court of Appeals
Fifth Circuit

**F I L E D**
March 6, 2009

Charles R. Fulbruge III
Clerk

No. 07-41015
Summary Calendar

WILLIE LEE GARNER, also known as Willi Free I Gar'ner

Plaintiff-Appellant

v.

PAUL MORALES, Individually and in his official capacity; ROBERT CRITES, Individually and in his official capacity; BRYAN GORDY, Individually and in his official capacity; EILEEN KENNEDY; MARTHA WEAR; ET AL.; JUAN M. GARCIA; LOUIS ROCHA; GINA K. CURRIE; SYLVIA VILLARREAL; RACHELLE RAMON

Defendants-Appellees

Appeal from the United States District Court
for the Southern District of Texas
USDC No. 2:06-CV-218

Before JOLLY, BENAVIDES, and HAYNES, Circuit Judges.

PER CURIAM:[*]

Willie Lee Garner, Texas prisoner # 606635, appeals the district court's adverse summary judgment on his free exercise, equal protection, and retaliation claims under 42 U.S.C. § 1983 as well as his claims under the Religious Land Use and Institutionalized Persons Act (RLUIPA or Act), 42 U.S.C. §§ 2000cc-

---

[*] Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

2000cc-5. He also appeals the district court's denial of his request for appointed counsel. For the following reasons, we affirm in part and vacate in part and remand.

## I. FACTS

Garner, a prisoner incarcerated in the Texas Department of Criminal Justice (TDCJ), adheres to Islam. He contends that the tenants of his Islamic faith require him to wear at all times a beard and a white head covering known as a Kufi. Impeding Garner's ability to adhere to these tenants of his faith are the TDCJ's no-facial-hair grooming policy, which requires all inmates to maintain a clean shave absent an objectively verifiable medical condition,[1] and the TDCJ's head-covering policy, which restricts Garner from wearing his Kufi to and from religious services. In 2004, Garner began refusing to comply with the TDCJ's grooming policy by not shaving; he was disciplined several times as a result. Garner admitted that he was not exempt from the policy due to a medical condition; instead, he argued that the TDCJ's inflexible grooming policy should yield to his religious beliefs.

Garner brought this suit against Lieutenant Juan Garcia, Sergeant Louis Rocha, Officer Rachelle Ramon, Commissary Manager Gina Currie, and Commissary Coordinator Sylvia Villarreal in their individual and official capacities. His suit alleges that the defendants violated his constitutional rights by refusing to allow him to maintain a quarter-inch beard and wear a Kufi to and from religious services. Specifically, Garner brought suit under § 1983, alleging violation of his First Amendment right to free exercise of religion, his Fourteenth Amendment right to equal protection of the law, and retaliation under the Eighth Amendment. Garner also claims that the TDCJ's policies violate the RLUIPA, which protects the religious practices of institutionalized persons.

---

[1] The grooming policy permits inmates with an objectively verifiable medical condition to obtain a clipper-shave pass, which allows them to maintain a quarter-inch beard.

The district court granted summary judgment in favor of the defendants on all of Garner's claims. The court provided a number of grounds for its judgment. First, the court concluded that sovereign immunity barred Garner from suing the defendants in their official capacities for money damages. Second, the court held that the defendants were entitled to judgment as a matter of law because Garner had not sufficiently shown a violation of either the RLUIPA or the First, Eighth, or Fourteenth Amendments. Finally, the court concluded that the defendants were entitled to qualified immunity. In a separate order, the district court denied Garner's request for appointed counsel. Garner's claims are now before this Court.

## II. DISCUSSION

We review the district court's grant of summary judgment de novo applying the same standard as the district court. *See Baranowski v. Hart*, 486 F.3d 112, 119 (5th Cir. 2007). Summary judgment is appropriate "if the pleadings, depositions, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." FED. CIV. P. 56(c). The movant bears the burden of demonstrating the absence of a genuine issue of material fact. *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994) (en banc) (per curium). In making our determination, all doubts and reasonable inferences must be resolved in favor of the non-movant, here Garner. *Id*.

### A. Sovereign immunity

Garner contends that the district court improperly held that sovereign immunity barred him from suing the defendants in their official capacities for money damages. We disagree. A suit against a government official in his or her official capacity is a suit against the entity that the individual represents, here the TDCJ. *Kentucky v. Graham*, 473 U.S. 158, 166 (1985). We have previously recognized that the TDCJ is an agency of the state, and is thus "shielded from suits by individuals absent its consent." *Mayfield v. Tex. Dep't of Criminal*

*Justice*, 529 F.3d 599, 604 (5th Cir. 2008) (citation and internal quotations marks omitted). Moreover, we recently held that the RLUIPA does not constitute a waiver of a state's sovereign immunity. *Sossamon v. Lone Star State of Texas*, No. 07-50632, 2009 U.S. App. LEXIS 3701, at \*28 (5th Cir. Feb. 17, 2009). Thus, the only potentially viable claims that Garner has brought against the TDCJ (through its officials) are those for declaratory and injunctive relief. *See McCarthy ex rel. Travis v. Hawkins*, 381 F.3d 407, 417 (5th Cir. 2004) (recognizing that declaratory and injunctive relief are exceptions to the doctrine of sovereign immunity); *see also Sossamon*, 2009 U.S. App. LEXIS 3701 at \*19 ("[The] RLUIPA unambiguously creates a private right of action for injunctive and declaratory relief."). Accordingly, we affirm the portion of the judgment concluding that Garner is barred from seeking money damages from the defendants in their official capacities.

## B. Free exercise claims

Garner also challenges the district court's dismissal of his free exercise claims. He contends that the TDCJ policies that forbid him from wearing a quarter-inch beard and a Kufi to and from religious services violate his First Amendment rights. Garner's claims are foreclosed by this circuit's precedent. In *Green v. Polunsky*, 229 F.3d 486 (5th Cir. 2000), an inmate contended that a TDCJ policy that forbid him from wearing a quarter-inch beard in accordance with his Muslim faith, yet allowed prisoners with certain medical conditions to wear three-quarter-inch beards, violated the Free Exercise Clause of the First Amendment. *Id*. at 488. We disagreed and held that the grooming policy was reasonably related to the TDCJ's legitimate penological interests. *Id*. at 490. Similarly, in *Muhammad v. Lynaugh*, 966 F.2d 901 (5th Cir. 1992), we rejected a free exercise challenge to a TDCJ policy restricting the use of Kufi caps, concluding that the policy bore a reasonable relationship to the legitimate penological interests of prison security. *Id*. at 902-03. Given these precedents,

the district court did not err in concluding that no fact issue exists on Garner's free exercise claims.

## C. Equal protection claim

Garner further contends that the TDCJ's grooming and head-covering policies violate the Equal Protection Clause of the Fourteenth Amendment because the policy forbids Muslims from wearing a quarter-inch beard in accordance with their religion, yet does not impose a similar restriction on inmates with certain medical conditions. He also notes that adherents of other religions are permitted to wear medallions, crosses, amulets, and medical bags, and also permitted to perform ceremonial rites like smoking a tobacco pipe and participating in sweat lodges.

To maintain his equal protection claim independent of his free exercise claim, Garner "must allege and prove that he received treatment different from that received by similarly situated individuals and that the unequal treatment stemmed from a discriminatory intent." *Taylor v. Johnson*, 257 F.3d 470, 473 (5th Cir. 2001). Discriminatory intent "implies that the decisionmaker singled out a particular group for disparate treatment and selected his course of action at least in part for *the purpose* of causing its adverse effect on an identifiable group." *Lavernia v. Lynaugh*, 845 F.2d 493, 496 (5th Cir. 1988) (internal quotation marks omitted).

The district court correctly concluded that Garner has failed to raise a fact issue on his equal protection claim. Garner has not established that the TDCJ enacted its grooming or head-covering policy for the purpose of adversely impacting the ability of Muslim inmates to practice their faith; rather, the TDCJ enacted the policies to forward its legitimate penological interests in prison security. Nor has Garner shown that the TDCJ applies its facially-neutral grooming and head-covering policies differently among Muslims or those of other faiths. Individuals receiving an exemption from the grooming policy due to an objectively verifiable medical condition are, by definition, not similarly situated

to Garner. Finally, Garner has not offered any facts demonstrating that the TDCJ intended to discriminate against him as a member of an identifiable group. Because Garner has failed to raise a fact issue on any potentially actionable theory of equal protection, the district court properly granted summary judgment on this claim. Moreover, because Garner has failed to establish that the TDCJ's grooming and head-covering policies violate his constitutional rights, he cannot establish an Eighth Amendment retaliation claim based on penalties incurred as a result of his refusal to comply with that policy. *See McDonald v. Steward*, 132 F.3d 225, 231 (5th Cir. 1998) (noting that an Eighth Amendment retaliation claim must be predicated on the violation of a specific constitutional right).

## D. Appointment of counsel and the RLUIPA

Garner requested appointment of counsel in the district court; his request was denied. There is no automatic right to appointment of counsel in a civil case. *Jackson v. Dallas Police Dep't*, 811 F.2d 260, 261 (5th Cir. 1986). A federal court may, however, appoint counsel for an indigent if doing so would advance the proper administration of justice. 28 U.S.C. § 1915(e); *Ulmer v. Chancellor*, 691 F.2d 209, 213 (5th Cir. 1982). Appointment of counsel in a civil rights case is generally reserved for cases presenting "exceptional circumstances." *Id.* While no precise formulation of such circumstances can be stated, courts generally look at the following:

> [i] the type and complexity of the case; [ii] the petitioner's ability adequately to present and investigate his case; [iii] the presence of evidence which largely consists of conflicting testimony so as to require skill in presentation of evidence and in cross-examination; and [iv] the likelihood that appointment will benefit the petitioner, the court, and the defendants by shortening the trial and assisting in just determination.

*Murphy v. Kellar*, 950 F.2d 290, 293 (5th Cir. 1992) (citation and internal quotations omitted).

The district court concluded that this was not a novel or complex case and that Garner could adequately present the issues to the court. With respect to the matters already discussed, we find no abuse of discretion in this conclusion. However, our review of the relevant case law and statutory developments causes us to conclude that this is a case of first impression under the RLUIPA. As such, it may be a case in which appointment of counsel is appropriate.[2]

Garner claims that the TDCJ's grooming and head-coverings policies violate the RLUIPA. The RLUIPA mandates that

> [n]o government shall impose a substantial burden on the religious exercise of a person residing in or confined to an institution . . . even if the burden results from a rule of general applicability, unless the government demonstrates that imposition of the burden on that person--
>
> (1) is in furtherance of a compelling governmental interest; and
>
> (2) is the least restrictive means of furthering that compelling governmental interest.

42 U.S.C. § 2000cc-1(a). "[The] RLUIPA thus protects institutionalized persons who are unable freely to attend to their religious needs and are therefore dependent on the government's permission and accommodation for exercise of their religion." *Cutter v. Wilkinson*, 544 U.S. 709, 721 (2005). We have recognized that "the RLUIPA standard poses a far greater challenge than does [traditional free exercise analysis] to prison regulations that impinge on inmates' free exercise of religion." *Freeman v. Tex. Dep't of Criminal Justice*, 369 F.3d 854, 858 n.1 (5th Cir. 2004). Moreover, Congress has mandated that courts construe the Act "in favor of a broad protection of religious exercise," to the maximum extent permitted by law. 42 U.S.C. § 2000cc-3(g).

Initially, the burden rests on the religious adherent to demonstrate that the challenged governmental policy substantially burdens the adherent's

---

[2] We recently appointed appellate counsel in another RLUIPA case presenting issues of first impression. *See Sossamon*, 2009 U.S. App. LEXIS 3701, at *11.

exercise of religion. *See* 42 U.S.C. § 2000cc-2(b). This requires courts to answer two questions: (1) Is the burdened activity "religious exercise," and if so (2) is the "burden substantial"?

The RLUIPA defines "religious exercise" to include "any exercise of religion, whether or not compelled by, or central to, a system of religious belief." 42 U.S.C. § 2000cc-7(A). The activities alleged to be burdened in this case – the wearing of a quarter-inch beard and a Kufi – easily satisfy this broad definition of "religious exercise." Thus, this case presents the question of whether the TDCJ's grooming and head-coverings policies "substantially burden" Garner's exercise of religion.

Although not defined by statute, this circuit has held that a government regulation substantially burdens a "religious exercise" for the purposes of the RLUIPA if it "truly pressures the adherent to significantly modify his religious behavior and significantly violate his beliefs." *Adkins v. Kaspar*, 393 F.3d 559, 570 (5th Cir. 2004). This test requires a "case-by-case, fact-specific inquiry to determine whether the government action or regulation in question imposes a significant burden on an adherent's religious exercise." *Id*. at 571. In conducting this inquiry, courts are forbidden from asking whether the practice at issue is central to the adherent's religious-belief system. *Id*. at 570. This limitation, however, "does not relieve a complaining adherent of the burden of demonstrating the honesty and accuracy of his contention that the religious practice at issue is important to the free exercise of his religion." *Id*.

If the TDCJ's policies impose a substantial burden on Garner's religious exercise, the defendants must then establish that the policies further a compelling government interest and are the least restrictive means of furthering that interest. 42 U.S.C. § 2000cc-1(a); 42 U.S.C. § 2000cc-2(b). In conducting this inquiry, courts are guided by the Supreme Court's recognition that the RLUIPA does not "elevate accommodation of religious observances over an institution's need to maintain order and safety." *Cutter*, 544 U.S. at 722.

8

Indeed, "prison security is a compelling state interest, and [ ] deference is due to institutional officials' expertise in this area." *Id*. at 725 n.13. Nevertheless, we do not believe that the Supreme Court intended these pronouncements to relieve prisons from the express mandate placed on them by Congress: that policies which substantially burden the religious practice of inmates be predicated on a compelling interest, that they further that interest, and that they do so in the least restrictive manner possible. *See* 42 U.S.C. § 2000cc-1(a); 42 U.S.C. § 2000cc-2(b).

Our circuit has never addressed the question of whether a religion-based request to have a quarter-inch beard is a significant burden on the adherent's religious exercise of the Islamic religion or whether the clean-shaven policy is the least restrictive manner of furthering a compelling interest. *Green*, 229 F.3d 486, is not dispositive as it was decided based upon law from a time when RLUIPA's predecessor statute, the Religious Freedoms Restoration Act (RFRA), had been found unconstitutional and the RLUIPA had not yet been passed. We have upheld a TDCJ policy banning long hair under the RFRA, based on some of the same interests asserted by the TDCJ here. *See Diaz v. Collins*, 114 F.3d 69, 73 (5th Cir. 1997). Although the RFRA has since been held unconstitutional, the RLUIPA adopts the same heightened standard of scrutiny as the RFRA. *See Cutter*, 544 U.S. at 715-16. In a recent unpublished opinion, however, we noted that *Diaz*'s reasoning concerning long hair is not dispositive of the issue presented by quarter-inch beards. *Gooden v. Crain*, 255 Fed. App'x 858, 861 n.1 (5th Cir. 2007) (unpublished) (reversing summary judgment because the issues involving the quarter-inch beard policy were contested fact questions). The district court did not have the benefit of our decision in *Gooden* when it denied relief.

Our circuit has expressed the view that a case of first impression might present an "exceptional circumstance" justifying appointment of counsel. *Santana v. Chandler*, 961 F.2d 514 (5th Cir. 1992) (concluding, however, that the

presence of law in other circuits lessened the need for counsel); *see also Duran v. Reno*, 193 F.3d 82 (2d Cir. 1999) (counsel appointed on appeal because the case presented an issue of first impression). The district court viewed this case as one presenting a well-settled issue – citing *Diaz* and the since-reversed district court opinion in *Gooden* – rather than a case of first impression. The court stated: "plaintiff's claims do not present any complexities that are unusual in prisoner actions."

Thus, the court's analysis of the need to appoint counsel failed to take into account the particular complexity and legal novelty of this case. As noted above, we conclude that this case is not the usual one. Because appointment of counsel in the district court is a question of discretion – albeit discretion exercised under the proper analysis of the situation – we conclude that the appropriate course of action is to vacate the district court's rulings on the RLUIPA claims and the appointment of counsel motion and remand for reconsideration of the latter first followed by the former in light of the opinion here stated.

## III. CONCLUSION

We VACATE the district court's adverse summary judgment on Garner's RLUIPA claims and the district court's order denying appointment of counsel and REMAND. We note that our recent decision in *Sossamon* held, as a matter of statutory interpretation and to avoid certain constitutional concerns, that the RLUIPA does not permit suits against defendants in their individual capacities. *Sossamon*, 2009 U.S. App. LEXIS 3701, at *28. Accordingly, on remand, Garner's RLUIPA claims are limited to declaratory and injunctive relief. In all other respects, we AFFIRM the district court's judgment.